ADELINE HAVENS et al., Administratrix of JAMES H. HAVENS, deceased, Respondent, *v.* THE ERIE RAILWAY COMPANY, Appellants.

One who is approaching a railway crossing, is not absolved from the duty of looking up and down the track to see whether a train is approaching, by the omission to ring the bell or blow the whistle; and if failure to take such precaution contributes to any injury received by him by a collision with trains running on said railroad, he cannot recover for such injury. (LOTT, J., and HUNT, Ch. J., *contra.*)

*Ernst* v. *Hudson River Railroad Company* (39 N. Y., 61), and *Wilcox* v. *Rome and Watertown Railroad Company* (id., 358), approved and followed

(Cause argued September 28th, 1869, and decided December 21st, 1869.)

APPEAL from a judgment of the General Term of the Supreme Court in the seventh judicial district, upon a verdict rendered by a jury at the Steuben Circuit, for the plaintiffs for $1,300.

The action was under the statute for negligently causing the death of the plaintiff's intestate, at a railroad crossing in the town of Corning.

Evidence given by the plaintiff's witnesses tended to show that no whistle was blown or bell rung upon the defendant's train when approaching the crossing where the accident occurred.

The plaintiff's counsel, after the judge had charged the jury, requested him to charge them that the deceased was not bound to stop and look up and down the railroad unless there were signals given; and if he heard no signals, he would have a right to assume there was no train within eighty rods of the crossing. The court so charged the jury. The defendant's counsel then asked the court to charge, that if the deceased might at any point within ten rods of the crossing, have easily seen the approaching train nearly a mile off, he was bound to survey the space, or in other words to look up the road; and if by omitting so to do he lost his life, the plaintiff cannot recover. The court refused and the defendant excepted.

The defendant's counsel further requested the court to charge, that if the bell was rung as the defendant's engineer and fireman swear it was, the plaintiff cannot recover. The court refused and the defendant excepted.

The jury brought in a verdict for the plaintiff of $1,300, and the court stayed judgment, and ordered exceptions heard on first instance at General Term.

The General Term ordered judgment for the plaintiff on the verdict.

The case below is reported 53 Barb., 258.

*Hiram Gray,* for the appellant, insisted that there was error in the refusal of the judge to charge the first request of the defendant, and cited *Ernst* v. *Hudson River Railroad Company* (39 N. Y., 61, 68).

*Brown & Graves,* for the respondent, on this point, cited *Ernst* v. *Hudson River Raiload Co.* (35 N. Y., pp. 27, 28, 30, 33, 35, 37, 38); 39 N. Y., pages 64, 65; *Brown* v. *New York Central Railroad Co.* (32 id., 597); *Newson* v. *New York Central Railroad Co.* (29 id., 390); *Johnson* v. *Hudson River Railroad Co.* (20 id., 74); *Hegan* v. *Eighth Avenue Railroad Co.* (15 id., 383); *Ireland* v. *Oswego Railroad Co.* (13 N. Y., 533); *Oldfield* v. *N. Y. & H. R. R. Co.* (14 id., 310); *Beisiegel* v. *New York Central R: R. Co.* (34 N. Y., 627); *Mackay* v. *N. Y. Central* (35 N. Y., 79); *Cook* v. *N. Y. Central R. R. Co.* (3 Keyes, 479); *McGrath* v. *Hudson River R. R. Co.* (32 Barb., 147); *Harper* v. *Curtis* (1 E. D. Smith, 78); *Gordon* v. *Grand Street R. R. Co.* (40 Barb., 550).

GROVER, J.   The questions argued by the counsel for the appellant, are those arising upon exceptions taken by the defendant's counsel upon the trial, to the charge of the judge to the jury, and to his refusal to charge as requested.   It appears from the case, that when the judge concluded his charge, to which no exception was taken, that the plaintiff's counsel

requested him to charge that the deceased was not bound to stop, and look up and down the road unless there were signals given; and that if they heard no signals, they would have the right to think that there was no train within eighty rods, and the court so charged. The defendant's counsel here asked the court to charge, that if the deceased might at any point within ten rods of the crossing have easily seen the approaching train nearly a mile off, he was bound to survey the space, or in other words, to look up the road, and if by omitting so to do, he lost his life, the plaintiff cannot recover. The court refused, and the defendant's counsel excepted. This request of the defendant's counsel must be read in connection with the propositions charged by the court upon the request of plaintiff's counsel immediately preceding it. When so read, it is clear that the point in controversy between the counsel was, whether the omission to give the signals upon the train required by statute, excuses the traveler approaching the crossing from all obligation to look up and down the track, when that can readily be done, to ascertain whether trains are approaching, and whether the omission to use his eyes for that purpose constitutes negligence that will preclude a recovery for an injury received by a collision with such train. From the charge given, and the refusal to charge as requested, the jury must have understood the court as holding that the omission to give the signals did excuse the traveler from looking up and down the track, and that his omission so to do, was no obstacle to a recovery. At the time the case was tried, some doubt existed as to the law upon these points in this State. Opinions given in this court published in the reports, had laid down the law, as it was given by the judge to the jury in the present case; but a close examination of the cases in which they were given will fail to show that such was the doctrine of the court. On the contrary, the rule that any negligence of the party injured contributing thereto will bar a recovery therefor has been uniformly adhered to. It may now be regarded as settled by this court, that a traveler approaching a crossing is

required to use his eyes and ears in looking, and listening to ascertain whether trains are approaching, irrespective of the question whether the signals required by statute are given upon the train, and that if an injury is received in consequence of his omission so to do, he cannot recover therefor. (*Ernst* v. *Hudson R. R. Co.* 39 N. Y., 61 ; *Wilcox* v. *Rome & Watertown R. R. Co.* id., 358.) The principle of these cases has been applied in several subsequent cases not reported. A further discussion of the principle or examination of the cases is unnecessary. The evidence in the case clearly made it the duty of the judge to charge upon these points. There was evidence tending to show, that by looking, the train could have been readily seen, and thus the danger avoided. The judge erred in refusing to charge as requested by the defendant's counsel. He should have instructed the jury, that an omission to ring the bell, or blow the whistle, would not excuse the deceased from the observance of proper care on his part, and that this care required him to look for trains when he had opportunity so to do, while riding in the wagon ; and that if the injury would have been avoided by his so doing, the plaintiff could not recover. The judgment should be reversed and a new trial ordered.

LOTT, J. (dissenting.) The only questions presented for our review on this appeal, are raised by the exceptions taken by the defendant's counsel on the refusal of the judge, on the trial, to charge as requested on the propositions or requests hereinafter set forth. The evidence was conflicting, whether the defendant had given the signals required on approaching a crossing, and whether its train was running out of its regular time and at an unusual rate of speed ; and there was some testimony tending to show that the deceased was himself chargeable with negligence contributing to his death. It was claimed by the defendant, and it was stated by one of the witnesses, a civil engineer, that at a point ten rods from the crossing, where the collision causing the defendant's death occurred, or at any intermediate point, there was no difficulty

in a man of his height, which was five feet eight inches, to see a train coming as far as a bridge nearly a mile distant back from the first mentioned point, and that there was nothing to obstruct the vision; but beyond that point there were some obstructions.

A witness of the plaintiff's, who drove the horse to the wagon in which the deceased was riding, testified that before going on the track of the defendant, and about seven or eight rods from the crossing, he looked around to see if there was an approaching train, and did not see any or hear any signal, and that at the time of the collision he was looking down the track in the opposite direction from that in which the train was coming.

The judge, after referring to the material portions of the testimony, charged the jury as to the relative obligations and duties of the deceased and the defendant, among other things, that they must look at all of the facts and circumstances of the case; that the deceased, although not driving, stood upon the same footing with the driver, and if the jury should find upon the evidence "that after going within eight, ten or twelve rods, they looked up and saw no train and heard none," they were to say "whether it would be ordinary prudence for them to go on the track looking down the road for a train coming in that direction;" and, further, that "men approaching a railroad in plain sight are bound to look to see if any train is coming; but, as was said by a judge in one of these cases, they cannot look both ways at once. If they looked up and down the road, as men of ordinary prudence would do in traveling near a railroad, and were not negligent, the plaintiffs are entitled to recover, if the persons in charge of the railroad were negligent;" and after the conclusion of his charge, he, at the request of the plaintiff's counsel, further charged "that the deceased was not bound to stop and look up and down the road unless there were signals given, and that if they heard no signals, they would have a right to think that there was no train within eighty rods."

No exception was taken to any part of the charge; but

after the remark last quoted was made, the counsel of the defendant asked the court to charge the jury, "that if the deceased might, at any point within ten rods of the crossing, have easily seen the approaching train, nearly a mile off, he was bound to survey the space, or, in other words, to look up the road; and if, by omitting so to do, he lost his life, the plaintiffs cannot recover." This was refused, and an exception to this refusal was duly taken, and presents the principal ground relied on for the reversal of the judgment.

There is no valid ground for that exception. As stated in the opinion of the court below, the request virtually did nothing more than ask the judge to repeat what he had already, in substance, said to the jury, in the remarks above quoted, and they state the rule, in respect to the conduct of the plaintiff in such cases, correctly, and cover substantially the very proposition presented in the request.

It is not a question of law, how far or at what particular point a person, approaching a railroad track, shall look up or down, to see if a train is coming, especially when there is a conflict of evidence, whether the train was running on time and at an unusual rate of speed, and whether the requisite signals of its approach were given or not; but he must use his eyes and ears, in view of all the facts and circumstances of the case, as men of ordinary prudence, placed in a similar situation, would do.

The request moreover assumed, that the deceased had not surveyed the space, or had not looked up the road at any point within ten rods of the crossing; or at least, that whether he had done so or not was a matter in dispute. As before stated, the judge had instructed the jury, and as the defendant considers properly, that the deceased and the driver stood upon the same footing, and the latter had expressly stated that he had, within the distance from the crossing designated in the request, made the survey and observation claimed to be necessary and incumbent on him. I find nothing in the case to contradict that statement or to justify the jury in discrediting it.

The jury were also instructed, that the statute required that the defendants should ring, or sound a whistle at a point eighty rods from a crossing, and to ring continuously until they reach a crossing, or to sound the whistle at intervals until they pass the crossing; and that if they should find that the defendants were running out of the usual time and prescribed rate of speed, and did not give the proper signals, they were not in the performance of their whole duty; but if they were running upon their ordinary speed and rung the bell continuously for the whole distance, they were guilty of no negligence, and that they would be bound to find a verdict for the defendants; but if they failed to give the signals required by law, they were guilty of negligence.

There was no exception to or complaint of this part of the charge; but the defendants' counsel requested the judge to charge that "it matters not whether the bell was rung the distance of eighty rods, if it was rung far enough from the crossing to warn passers by." He refused to charge further or different from what he had charged on that question, and to such refusal an exception was also taken, and that raises the only other ground relied on for the reversal of the judgment.

That refusal was proper. The legislature have deemed it necessary for the protection of human life and the safety of the public, and to "warn passers," by the ringing of the bell, that it should be rung at a prescribed distance, and the courts are not at liberty to limit it. The adoption of the rule stated in the request would, in effect, nullify the statute.

Some other exceptions are presented in the case; but as they are not insisted on in the defendants' points, I assume that they are abandoned, and I deem it, therefore, sufficient to say in reference to them that I have examined them, and that none of them are, in my opinion, well taken.

It follows that the judgment should be affirmed with costs.

MASON, JAMES, MURRAY, and DANIELS, JJ., concurred with GROVER for reversal.

Daniels, J., also thought there was error in refusing the second request of the defendant.

Hunt, Ch. J., concurred with Lott, J., for affirmance.

Woodruff, J., took no part.

Judgment reversed.