ABEL EATON, Respondent, *v.* THE ERIE RAILWAY COMPANY, Appellant.

The ringing of a bell or the sounding of a whistle upon a locomotive attached to a long freight train, which is standing with its rear end partially across a street in a city, is not such notice to passengers upon the street of an intended backward movement of the train as will absolve the railroad company from the charge of negligence. Nor does the omission of those signals absolve the passengers upon the street from the obligation to exercise proper care and watchfulness.

(The head-note in *Havens* v. *The Erie Railway Company* [41 N. Y., 296], so far as it states that LOTT, Ch. C., dissented from above rule, corrected.)

While a train was thus standing upon defendant's track, plaintiff, desirous of passing upon the street with his horse and wagon, asked a young man who had got off the train, but who it did not appear was in defendant's employ, if he could pass. He was advised not to do so, as the train might back at any time. Plaintiff waited a few minutes, and then attempted to lead his horse across the track in the rear of the train, when the train moved backward, struck and injured the horse and wagon. *Held*, that this was not such evidence as constituted contributory negligence as matter of law, but the question was one of fact for the jury.

(Argued January 11, 1873; decided March term, 1873.)

APPEAL from judgment of the General Term of the Supreme Court in the sixth judicial district, in favor of plaintiff, entered upon an order affirming an order of Special Term, denying a motion for a new trial, and directing judgment upon a verdict.

The action was brought to recover damages for injuries to plaintiff's horse and wagon and merchandise, alleged to have been occasioned by the defendant's negligence.

The injury complained of occurred in a highway or street in Elmira. The defendant's train of cars was standing in it, but not entirely across it. There was space enough between the rear car of the train and the sidewalk to allow the plaintiff's horse and wagon to pass. The train backed up as the plaintiff was leading his horse, with the wagon, across the track. The plaintiff gave evidence tending to show that

neither the bell was rung nor the whistle was blown before the train started. The defendant proved, by the conductor and engineer of the train, that the whistle was blown before the train was started backward. The defendant further proved, by Clifford P. Deyo, who had temporarily got off the train at the time, that he cautioned the plaintiff about passing over the track, and advised him not to undertake it, as the train might back up at any time. The plaintiff, after waiting a few minutes, said, " I guess I will try it," and then went on.

The defendant's counsel requested the court to instruct the jury that " if the defendant caused the whistle to be sounded, as testified to by the conductor and engineer, and the plaintiff was advised, as testified by Deyo, not to pass, then the defendant is not liable." The court refused to so instruct the jury. The defendant's counsel excepted to this refusal.

Further facts appear in the opinion.

The plaintiff obtained a verdict of $436.04. Exceptions were directed to be heard in the first instance at General Term, and the entry of judgment was in the mean time suspended. The defendant made a case, containing exceptions, and moved for a new trial at Special Term; the motion was denied. He then appealed from the order denying the motion for a new trial. The General Term affirmed the order of the Special Term, and ordered judgment for the plaintiff, with costs. Judgment was entered accordingly.

*John Ganson* for the appellant. The court erred in refusing to charge that if the jury found, from the evidence, that the signal and warning were given, defendant was not liable. (*Nicholson* v. *Erie R. Co.*, 41 N. Y., 525, 541.) Defendant was lawfully in the *locus in quo*, and was only bound to sound the whistle and give plaintiff a personal caution not to move on the track. (*Beisiegel* v. *N. Y. C. R. R. Co.*, 40 N. Y., 9; *Grippen* v. *Same*, 40 id., 34; *Van Schaick* v. *H. R. R. R. Co.*, 43 id., 527).

*S. B. Tomlinson*, for the respondent.

LOTT, Ch. C.   It is claimed by the respondent's counsel that an appeal will not lie from the judgment entered in this action, on the ground, as he says, "that it was not an actual determination made at the General Term."   In this he is mistaken.   The judge, who tried the cause, directed that the exceptions which were taken on the trial should be heard in the first instance at the General Term, and that judgment be in the mean time suspended.   The counsel for the defendant, however, made a case containing the exceptions, and thereupon moved for a new trial at Special Term, which was denied, and he then appealed from the order of denial to the General Term, who, after hearing the appeal, affirmed the said order and *also ordered judgment* for the plaintiff on his verdict, with costs.   That is the only *judgment* rendered. There probably was an irregularity in hearing the exceptions at Special Term, after the direction to hear them in the first instance at General Term; but the entry of judgment was nevertheless stayed until the hearing and decision at General Term, and there was an actual determination made by it, and the appeal is taken from the judgment founded and entered thereon.   There is, consequently, no ground for the dismissal of the appeal.   (See *Caughey* v. *Smith*, 47 N. Y., 244.)

It then becomes necessary to consider whether the court erred in refusing to charge the jury in reference to the defendant's liability, as requested by its counsel.   That request involved two questions.   The first affected the allegation of negligence by the defendant, and the other that of contributory negligence or fault of the plaintiff.   They will be examined in that order.

The case shows that the defendant backed its train of cars so as to come into collision with the plaintiff's horse and wagon which were crossing the railroad tracks of the defendant laid in a public street in the city of Elmira.   It is not claimed that any other notice had been given of the backward movement of the train than the sounding of the whistle on the locomotive, by which it was propelled or moved, and the request assumes that none other was necessary.   That assump-

tion is evidently based on a mistake relative to the requirement of the statute (chapter 282 of the Laws of 1854), which imposes the duty of every steam railroad company, on the approach of its train to a traveled public road or street, to ring a bell or sound a steam whistle at the distance, at least, of eighty yards from the place where it is to be crossed, as therein specially provided.   The provision in reference to the subject is contained in section 7 of the law.   It first provides for the. ringing of a bell, and then, as an alternative, the sounding of such a whistle, *except in cities*.   It is thus made incumbent in *all* cases to *ring a bell* in crossing such a road or street in a city, and such ringing cannot be dispensed with.   The conductor on the train in question said that " the bell was not rung."   There was, therefore, a failure to comply with the duty imposed by the statute.   If, however, it be assumed that it had been complied with, that fact alone would not have absolved the defendant from the charge of negligence.   The bell was nearly, if not quite, 1,000 feet distant, and perhaps even at a greater distance from the end of the train ; and one of the defendant's witnesses (Deyo), who was at or toward the end, swore that, although he heard a whistle on the occasion, he could not say whether it was that on the train in question, " because there was so many whistling at the time," having reference to other trains; adding, it is true, as another reason, that he " was setting the brake at the time."   There was other evidence, on the part of the defendant, tending to show that it could not be distinguished from which train the sound of the whistle which was heard came ; and the plaintiff and the witnesses introduced by him testified that no signal whatever was given to indicate or give notice of the movement of the train.   It was, moreover, fairly inferable from the testimony that there was no conductor, flagman or other person charged with the duty of warning or in any way notifying travelers not to pass behind the train.   It had been standing in the street and obstructing the usual passage over it for a considerable time, and it would seem to have been proper for the defendant to have provided some other means to apprise

the public that it was to start, either forward or backward, than the ringing of a bell or sounding a whistle at so remote a point from the place of danger, and that such notice should have been given sufficiently long before such movement was in fact made to have notified the plaintiff before he attempted to cross the track of its impropriety and the risks he would encounter. To give him that notice after he had gone partly over, and when to recede was as dangerous as to go ahead, was not sufficient, and indeed useless under the circumstances. At all events the case, as presented by the evidence, was not such as to have justified the court in instructing the jury that the defendant was not in fault, and that it had discharged its duty by sounding the whistle and could not be held chargeable on the ground of negligence.

It now remains to be considered whether the plaintiff, by passing on to the track of the defendant, after the caution given by the witness, Deyo, referred to in the request, was guilty of such contributory negligence as to absolve the defendant from all liability for the damages he sustained.

I do not agree with the counsel of the plaintiff, that the omission by the defendant of the signal required by law to be given " gave assurance to the plaintiff that the train would not run, especially backward, so as to interfere with his crossing, and that he had a right to rely on such assurance without incurring the imputation of breach of duty to a wrong-doer;" and that " he had a right to assume that the crossing was safe." Such omission did not absolve him from the duty and obligation of exercising proper care on his part to avoid a collision, as is fully established by the doctrine or principle of the decision in *Havens* v. *The Erie Railway Company* (41 N. Y., 296); and I deem it not inappropriate here, in citing that authority, to say that such rule had been previously acted on by me on trials at the circuit, although I dissented from the majority of the court in that case, in reversing the judgment and ordering a new trial thereon. Such dissent was not on the ground (as is inferable from the head note) that I did not approve of or concur in that doctrine or prin-

ciple, but, as appears from my dissenting opinion, because I did not consider the question raised by the exceptions, which were taken—*not to the charge which had laid down a contrary rule*—but to the refusal of the court to charge on certain *other and different specific* propositions or requests particularly set forth.

The portion of the request now under review related to the testimony of a single witness (the said Deyo), and to a specific part of that only. It, therefore, becomes material to refer to it with some particularity. It appears from his statement that he was, at the time of the trial in April, 1867, eighteen years of age; that he resided at Binghamton, where his "folks" had lived three or four years, but he himself had not been there all the time, and that he had been going to school the previous winter; that he had come on the train in question on the day of the accident (7th of April, 1865), from Susquehanna to Elmira; that he there got off and stood on the ground, and, after the train had been standing there some ten or fifteen minutes, his interview with the plaintiff took place; and, in speaking of it on his direct examination, he testified as follows: "This man asked me if I thought he could pass there, and I told him he better not, as the train might back at any time; I told him he could pass there, but better not; I meant there was room for him to pass; he asked me if I thought he could pass; I told him he might pass, but he had better not, as they might start at any time." He then, on being cross-examined, said "he asked if he could pass; I told him he might, but that he better not; that was all, except that he said, a few moments after, 'I guess I will try it;' I did not say anything;" and, on a re-direct examination, he further said: "I think it a couple of minutes; it was a very short time after I told him he better not that he started." This is all that was said between the plaintiff and this witness. He does not state nor do I find anything to show that he was in the employment of the defendant in any particular position or at all; or that he was in any way charged with the duty of notifying the public or travelers in

relation to passing over the railroad track; nor was there anything done when that conversation took place from which the plaintiff could infer that the witness had any connection with the road. On the contrary, he said that there was at the time " a number of men there (some carpenters) building sidewalk;" and it is not shown that he was acting in such a way as to inform the plaintiff, who he said was loading provisions at the time, that he was other than a bystander. The only facts stated by him to raise an inference that he was in any way connected with the road was that he came on the train from Susquehanna to Elmira, as above stated; that he " set the brake on the caboose" (which I infer was the last car on the train) " as tight as he could ;" that he " was the one left to flag the train " (evidently referring to another train in the rear, which he " could see two or three miles ;" but it does not appear that he used a flag or had any; and that he " was setting the brake" at the time he heard a whistle, which has been referred to in speaking of his testimony on that question. None of those facts were, however, known to the plaintiff.

This extended reference to the circumstances under which the advice or caution of that witness, to which reference is made in the request, was given, shows that his residence, age, education and employment at the time, conceding them to be sufficient to have qualified him to inform the plaintiff that " the train *might* back at any time," and to have entitled his opinion, as to the expediency of passing over the track, to some consideration and respect, fail to establish the fact conclusively and indisputably that the plaintiff acted rashly, or that he, by his own fault or negligence, contributed to the damage sustained by him. So far as appears, the witness was a mere volunteer in doing what he did to the brake, and had no better means of speaking about the movement of the train than any of the other persons who were present on the occasion. The plaintiff did in fact wait a few minutes after the advice was given (during which time he could have passed over and have been out of danger) before he started; and there did not then seem to be any more signs or indication of

its movement than there was when the plaintiff first made the inquiry.

The notice from the young man was not that the train *would* move backward, or that it would be done at once, but that it might do so at some indefinite time. The plaintiff nevertheless heeded it. He did not start for at least two minutes afterward. During that time he could have passed over the track in safety. The result showed that he waited too long. If he is to be charged with contributory negligence for attempting to cross when he did, it may be asked how much longer he was bound to wait, without further warning, to be relieved from that charge. The longer he waited, the more likely, it is true, was it that the train would move, and yet such movement might have been delayed for an hour, and indeed during the remainder of the day. Was he bound to submit to such an interruption in the use of the highway? I think not. He had a right to expect that some previous warning would be given, that the train was about to back, to put him in fault, and the warning should have been such as to have given him an opportunity to have got off the track after he had started to cross it. Instead of this, the fair inference from the evidence is, that it began to move as soon as the whistle was sounded.

It is well said by the plaintiff's counsel, in the points submitted to us by him, that "the measure of precaution which prudence suggests is in due proportion to the probability of danger." That, in this case, was a fact proper to be determined by a jury, under and in view of all the surrounding circumstances, and not a question on which the court could properly have instructed them as requested. Such instruction, as the judge said in answer to the request, would be taking the case from them, and deciding it himself.

It follows, from the views above expressed, that there was no error in the refusal to charge in compliance with it. They also show that a nonsuit would have been improper, and that the plaintiff was entitled to have all the facts submitted to a jury, for them to determine on the questions of the relative

negligence and fault of the respective parties, and by which that of the defendant's liability was to be governed.

It is proper to notice in conclusion that the counsel of the appellant has not made any point in reference to certain exceptions that were taken on the admissibility of evidence. It might be assumed, therefore, that they have been abandoned. They have nevertheless been examined, and none are well taken, or at all events available as a ground for the reversal of the judgment.

It must consequently be affirmed, with costs.

All concur, except Gray, C., not voting.

Judgment affirmed.