*274 The opinion of the Court was delivered by
Bermudez, C. J.
The Relator and the defendant respectively assert conflicting claims to the office of Coroner for the Parish of Orleans.
Prom a judgment recognizing the latter as entitled to it, the State and the former have appealed.
The gravamen of the petition is: that the Relator was appointed and commissioned to the office by the Governor, on the 21st of October, 1881; that he took the oath and furnished the bond required by law on the 22d and 27th of the same month; that he was so appointed and commissioned to fill a vacancy in the office, resulting from the disqualification of the defendant, who had been elected and commissioned to the same; that the defendant obstructs and hinders the Relator in the exercise of the duties of the office, and that Relator desires being quieted in the possession of the same. The prayer is, that the defendant be declared to have forfeited the office of Coroner, and be adjudged guilty of usurping and intruding into said office, and excluded therefrom, and that it be decreed that the Relator is legally invested with the title of the office.
The defense is, first, a general denial, and next, an assertion of the right of the defendant to the office, by virtue of his election thereto, on the 2d of December, 1879, for four years from the 2d of August, following; his commission from the executive, issued on the 5th of Januaiw, 1880; his oath of office taken on the 4th of February; his bond furnished on the 31st of July, and registered on the 2d of August, following; his induction then into office; a total absence of resignation since, on his part; his actual possession of the same, with all its incidents ; a peremptory denial that there existed any vacancy in the office at the date of Relator’s appointment, which was wholly unauthorized. The defendant concludes by praying, both that Relator’s petition be dismissed, and that there.be judgment in his favor.
At the inception, the proceedings were charged with irregularity, but the parties have expressly agreed that they be considered as instituted under the intrusion into office act, and be conducted and determined under its provisions.
The only question presented by the pleadings, which run the one into the other, and blend themselves, is simply:
Whether there existed a vacancy in the office of Coroner of the Parish of Orleans, when the Relator was appointed and commissioned by his Excellency, Governor MeEnery, to fill it, and whether, if it existed, the Governor could thus fill the vacancy.
The corollary of the proposition is, that if there existed such vacancy, and the Governor had a right to fill it, the Relator is entitled to the office, having seasonably complied w'ith legal requirements; and that *275 if there existed no vacancy, original, constructive or absolute, 32 A. 637, which the Governor could then fill, the appointment of Relator is inoperative, and the Respondent is authorized to continue in the possession of the office and in the discharge of its functions.
There can he no dispute touching the facts of the case. The evidence clearly establishes them to be as alleged by the litigants. It shows also, under an averment of the petition not previously noticed, that the Respondent was, since the date of his commission and oath of office, viz: in April, 1880, elected a member of the Board of Health, and that he lias qualified and acted as such, until the latter part of October, 1881, when he resigned the trust.
On the one hand, it is urged that there existed a vacancy, because, after accepting, in February, the office of Coroner, the Respondent accepted, in April following, that of member of that Board.
On the other hand, it is pressed that when the Respondent accepted the appointment on that Board, in April, and at first acted under it, he had not qualified as Coroner and was not in office $ that, as he only qualified as Coroner by giving bond on the 31st of July, 1880, it is then that he vacated his membership of that Board; that his subsequent action in it was that of an intruder, which did not operate a vacancy in the office of Coroner; that even if it did, he could have been displaced only by judicial action, and that the Governor had no right before a vacancy had thus been declared, to appoint the Relator.
From the'view which we have taken of the merits of the controversy, we deem it unnecessary to notice the allegation in the petition and the evidence adduced in support, to the effect that the Respondent was elected, commissioned, qualified and acted as a member of the Board of Health. It is true, that the allegation was made that a vacancy was thereby created in tlie office, but leaving it out of sight, as though it had not been made, there remains the broad charge of disqualification, which, coupled with the prayer and the formal consent of the parties as to form, impresses upon the action the character of a proceeding under the intrusion into office act, in which both litigants raise claims to the office. What evidence the Relator did not, or possibly could not offer, was supplemented by the Respondent, under Ms assertion of title in himself, and in justification of his own prayer for a judgment in his favor.
The suit was not brought by the State alone to test the right of the defendant, but was instituted by the State on the relation of a party interested, claiming the office, who produced prima facie muniments of title to the same.
We feel no hesitation in thus dealing with the pleadings.
*276 In a matter involving a' question of public interest, arising under laws enacted for the preservation of public order and for the maintenance’of public good, we could not, consistently with duty, consider the State and the Relator, presenting an appearance of a public functionary in a case in which more than his personal advantage is at issue, as concluded by an averment from which an admission might be inferred, that the Respondent had qualified, when the Respondent, proves that he has not done so. The confession and consequent estoppel could enure to the benefit of defendant only, and constructively to the detriment of the community; but how could the Respondent insist upon such a technical proposition when he himself, properly realizing the essential necessity of establishing beyond doubt, a compliance with the rigid requirements of the statute, has treated the averment as though not made, and has introduced the clearest ovidence demonstrating tangible errors.
Were it otherwise, we might find little obstacle in arriving, on the merits, at the same result which we have reached from a different standpoint.
An inquiry into the apparent right of the Relator exacts a consequent legitimate determination of the claims of the Respondent, for it is only in the contingency that he has none, that the pretensions of the Relator can be recognized and enforced.
We must then divide the inquiry and ascertain :
1st. Whether the Respondent has, under the commission issued to him by virtue of his election, legally qualified under the law, and if not, whether Ms failure to do so, operated ipso facto a divestiture.
2d. Whether the Governor could fill, by appointment, the vacancy thus happening.
I.
By Act 19 of 1878, Sec. 1, (p. 43) it is provided: that all State, District and Parochial officers of this State, whether elected or appointed, shall be required, within thirty days after the receipt of their commissions, to take the oath of office prescribed by law, and give bond, where bond is required, and cause the same to be filed in the proper office, in the manner and as required by law. Section 2 further provides : that the failure of any officer to comply with the requirements of Section 1 of this Act, within the limitations therein fixed, shall operate a vacation of such office, and the Governor shall proceed to fill said office by appointment, as in other eases of vacancy.
Ten years previously, Act 39 of 1868 had been passed, the seventh section of which twice received judicial consideration, 21 A. 490 ; 24 A. 19, the Court decreeing its unconstitutionality.
*277 It. was an odious enactment, retrospectivo in character, oppressive in its object.; designed to affect, the tenure of officers in office at its adoption, by requiring arbitrarily from them, the fulfilment of certain ceremonies which the Constitution and laws in force at the time of their induction did not demand. It spoke in opposition to the Constitution by enlarging its requirements. It contained, however, no formal irritating clause; that is, no punitory provision visiting upon the delinquent an instantaneous divestiture of his title to the office.
In the case in 21 A., the Court noticed this omission, saying : “ Failure to take the oath, testing his (Relator’s) ineligibility, and to file it in the office of the Secretary of State in the time limited in Act No. 39, did not, ipso facto, destitute him of office.” This ruling was affirmed in 24 A. 19.
Subsequently, in State ex rel. Lisso vs. Peck, 30 A. 280, the same Act of 1868 received further attention, and the Court, said: that the. legislature had not declared that a failure to execute a bond within thirty days shall operate, ipso facto, a divestiture of a constitutional office, though such failure may be considered as a presumption of abandonment.
This decision was rendered on the 4th of February, 1878. It neither admits nor denies a lack of power in the legislature, to provide for the consequences of such omissions; but it leaves the question an open one for future determination.
On the 9th of February following, Act No. 19 of 1878, under consideration, was approved. It is claimed that it was adopted to. meet the-legislative deficiency alluded to in the case, and it does so appear. It provides, as already stated, that a failure to comply with its requirements, within the limitations fixed, shall operate a vacation of the office, and that the Governor shall proceed to fill it, by7 appointment, as in other cases of vacancy.
In the absence of any constitutional inhibition, we cannot perceive why the legislature shonld not be, and was not competent to provide in that manner, in order to enforce a compliance by all public officers in the State, with the laws requiring them to quality, by taking an oath and furnishing a bond, where one is demanded, within reasonable delay.
Neither in the oral nor in the printed argument submitted on behalf of the Respondent, nor in the authorities to which our attention has been invited, have, we discovered any' valid reason whyr such legislation should be paralyzed, on the ground of unconstitutionality.
The admitted elementary and familiar rule in such matters clearly is, that the Legislature essentially possesses the inherent power to legislate as a sovereign on all subjects and in all manners, unless by so *278 doing it contravenes a constitutional prohibition found either in the State, or in the federal organic law. Cooley on Const. Lim. 100, 107, 204, 208, 209.
At the time when the Respondent was elected and commissioned, the Act of 1878, which was prospective, and that requiring bond and security from him, R. S. 649, were in force. He therefore well knew that he had to take the oath and to furnish the bond, within a specified time, under penalty of forfeiture of his right to the office.
We do not regard the requirements of the Act of 1878 as merely directory, but consider them as mandatory, as they inflict a penalty in case of non-observance. The use of the word shall in the two sections, 1 and 2, collided with the penalty, denote an imperative command for the benefit of the public, that the fundamental acts of taking the oath and of furnishing of the bond shall take place, as conditions pi-ecedent, nine quibus non, within the fixed period and at no other time.
No court certainly has the right to hold any requirement of a law Unnecessary to be complied with, unless it is manifest that the legislature did not intend to impose the consequence which -would necessarily follow from a non-compliance, or which would result from holding the requirement mandatory or indispensable. If it be clear that no penalty was intended to be imposed for a non-compliance, then, as a matter of course, it is but carrying out the will of the legislature to declare the statute on that subject to be simply directory. But if there be anything to indicate the contrary, a full compliance with it must be enforced. Corbett vs. Bradley, 7 Nev. 108; Hart vs. Omaha, 4 Neb. 336; State vs. Johnson, 26 Ark. 281; Wendell vs. Durbin, 26 Wis. 390; French vs. Edwards, 13 Wall. 566; Torrey vs. Milberry, 21 Pick. 67; Wiley vs. Flournoy, 30 A. 609; Cooley Const. Lim. No. 77, et seq. and notes; Sedgwick on St. and Const. Law, p. 375, and notes.
AYhatever it may be claimed that the saying of the Court was in 30 A. 280, it can have little or no bearing on the instant case, as the law then under consideration was that of 1858, and that now under examination is that of 1878, which are very materially different. The. latter virtually provides that "which the former had been declared not to contain, namely: that the failure to comply with the requirements of the taking the oath and furnishing the bond, within a limited period, shall, ipso facto, operate a vacation of the office, and that the Governor shall proceed to fill it, as in other cases of vacancy.
It is manifest that the law imperiously requires both the taking of the oath and the furnishing of the bond, within the thirty days following the receipt of the commission, and that it exacts a rigid compliance under a heavy penally.
It is an elementary principle, in the construction of Statutes, and *279 which is formally recognized in our Code, that where a law is clear and free from all ambiguity, the letter is not to be disregarded, under the pretext of pursuing its spirit, R. C. C. 13. Ubi lex non distinguit, nee •nos distinguere clebenivs.
Whatever may be the position which the Respondent may assume, it irrepressibly proves destructive of his pretensions.
It is totally immaterial whether Respondent’s commission, which is dated January 5th, took effect on that day, or on the 4th of February, when he took the oath, or in the beginning of April, under Article 265 of the Constitution, or on the iirst Monday of August, when he filed his bond in the office of the Secretary of State, and which was the day on which the government was reorganized under Article 266.
It is glaring that the Respondent has completely omitted to comply with the exigencies of the law, by failing to do the two acts, the taking of the oath and the furnishing of the bond, within the thirty days which followed either of those initial points.
The unavoidable consequence of such dereliction was, in the words of the Statute, to operate “ a vacation in the office ” and to impose upon the Governor the duty of filling the vacancy thus created.
This disposes the first branch or subject of inquiry in the case.
II.
We are now led to consider the next important proposition :
Whether the Executive could treat the office as vacant, and fill it accordingly.
It is undeniable that the Governor has, under Article 69 of the Constitution, authority to fill vacancies happening during the recess of the senate. It necessarily implies the right to ascertain whether a vacancy exists, and if it exists, to fill it by the appointment of a proper person.
The theory that the Governor cannot exercise that authority, unless after a vacancy has been judicially declared, is utterly without foundation, as an absolute proposition of law. Were it so, vacancies occurring by death, resignation, removal by the legislature or expiration of term, could not be filled until after they had been announced as existing, by judicial determination, and in the meantime, the government would be, in some instances, deprived of its official and necessary agents and representatives.
But the theory is founded on sound principles of political economy, when it goes to the extent, as a relative proposition of law, that the Governor cannot do so, so as to conclude officials who may have been deemed, in error, to have died, to have resigned, to have been removed, or whose term may have been considered as expired, or to have for *280 feitecl their rights to an office, when the fact is, that they are not dead, have not resigned, have not been removed, that their term is nneapired, or that they have not forfeited their right to the office.
The authority vested in the Governor to fill vacancies, can only be exercised, and when exercised, prove conclusive, where he has made an appointment to fill a vacancy actually and legally existing, in the discharge of liis official functions.
In the eventuality that an appointment has not been made in such contingency, it could not prove conclusive. The issuance of a commission under it would not debar the aggrieved from resisting displacement and appealing to the tribunals of the country, who would then be competent, on inquiry, to determine the question of vacancy vel non. Otherwise, under a disregard of official duty, or a misapprehension of facts, a Governor might, arbitrarily or unwittingly, without warrant of law, displace or remove the officers of the government, and create a condition of things which the fundamental law never for a moment designed to permit or to sanction.
In a recent case, 33 A. 871, we had occasion to apply the doctrine and to declare that a commission, issued in error by the executive, could not deprive an incumbent of his right of office. There exist a number of instances in which the principle was invoked and recognized in this State. 12 A. 719 ; 17 A. 161; 21 A. 490; 24 A. 19 ; 25 A. 396; 32 A. 936; 33 A.
Did we find in the very instance before the Court, that the Respondent had qualified under the Act of 1878, and .having thus qualified, had not vacated the office by the acceptance and filling of another office which the Constitution prohibits him from simultaneously holding, we assuredly would feel authorized so to adjudge, and to strike with nullity Relator’s appointment and commission to the office in question.
We must not be understood as holding that, in the exercise of the power giveri to him by law, of removing public officers for certain causes, the Governor is not the sole judge of the existence of such causes, and that his action of removal is not final and is revocable by the judiciary. In the case of the State ex rel. vs. Lamantia, 33 A. 447, we have clearly announced the law on that subject, and we affirm what we there said.
It is, therefore, only in those cases in which a vacancy indisputably exists and has been legally filled, that the appointment and the commission issued in furtherance, by the executive, will, after investigation, be maintained by the judiciary. Whatever may have been said apparently at variance with this doctrine, in our jurisprudence, must bo considered as subordinate to that limitation, which is one of great public magnitude.
*281 We therefore conclude that the Respondent forfeited his right to the office of Coroner of the Parish of Orleans, to which he had been elected and commissioned, by not qualifying under the requirements of Act 19 of 1878; that his failure to do so lias operated ipso facto a vacancy in that office; that it then became the duty of the executive to fill the vacancy thus happening; that the executive has made a legal appointment and issued a valid commission to fill such vacancy; that the Relator has qualified under such appointment and commission and has the exclusive right to discharge the functions of that office, under the Constitution and the laws of this State.
The finding of the District Judge is erroneous.
It is therefore ordered and decreed, that the j udgment appealed from be reversed, and proceeding to render such judgment as should have been rendered by the lower court:
It is ordered, adjudg'ed and decreed, that the Respondent, J. C. Beard, be declared to have forfeited all right to the office of Coroner for the Parish of Orleans, by reason of his failure to comply with the requirements of Act No. 19 of 1878, and that the Relator, Y. R. Lemonnier, be pronounced to have been duly appointed and commissioned, and to have duly qualified, to fill the vacancy created in said office, by said forfeiture, during the unexpired term of the same.
Tt is further ordered, that the Respondent pay costs in both Courts.