CHICAGO, BURLINGTON AND QUINCY RAILROAD CO.
v.
ROBERT SPRING.

1.  CROSSING RAILROAD TRACK—NEGLIGENCE.—It is not, as a matter of
law, allowable for a party about to cross a railroad track, to implicitly rely
on the judgment of a flagman or watchman, as to his safety in crossing; but
aside from that, he must use the prudence and caution that a reasonably
prudent man would, under all the circumstances.

2.  INSTRUCTION.—Where the court instructed the jury to the effect that
if the flagman signaled appellee to cross, he was not negligent, in obeying.
*Held*, that this was improper. Such instruction would remove from the
jury all other facts tending to show negligence. For, although a switch-
man may have been at the crossing, and although he may have beckoned
appellee to cross, yet it may have been perfectly apparent to any prudent
person, that it would have been very dangerous to cross.

APPEAL from the Circuit Court of Peoria county; the Hon.
N. M. LAWS, Judge, presiding. Opinion filed July 27,
1883.

Messrs. JACK & MOORE, for appellant; that if plaintiff
failed to use ordinary care no action will lie, unless the injury
was inflicted willfully by defendant, cited C. B. & Q. R. R.
Co. v. Johnson, 103 Ill. 512; Wilcox v. Rome R. R. Co.
39 N. Y. 358; Gonzales v. Harlem R. R. Co. 38 N. Y.
440; St. L. A. & T. H. R. R. Co. v. Manly, 58 Ill. 300; C.
B. & Q. R. R. Co. v. Van Patten, 64 Ill. 510; C. B. & Q. R.
R. Co. v. Lee, 68 Ill. 576; I. C. R. R. Co. v. Hetherington,
83 Ill. 510.

Hypothetical questions put to a medical expert must be
predicated upon the facts proved, or which evidence has
been offered tending to prove: 2 Best on Ev. §§ 513–517;

Tingley v. Cowgill, 48 Mo. 291; Dunham's Appeal, 27 Conn. 193; Guiterman v. Liverpool, etc. 83 N. Y. 358; Fraser v. Jennison, 42 Mich. 206.

Nothing should be permitted to go to the jury to establish facts not alleged: T. W. & W. R. R. Co. v. Beggs, 85 Ill. 80; City of Bloomington v. Goodrich, 88 Ill. 588; C. & A. R. R. Co. v. Mock, 72 Ill. 141; C. B. & Q. R. R. Co. v. Magee, 60 Ill. 529; Central Military Tract Co. v. Rockafellow, 17 Ill. 541; C. B. & Q. R. R. Co. v. Harwood, 90 Ill. 427; I. C. R. R. Co. v. McKee, 43 Ill. 119.

Plaintiff is not absolved from the use of ordinary care and prudence by the act of the flagman in beckoning him on, even when the flagman is the agent of the company: Havens v. Erie R'y Co. 41 N. Y. 296; R. R. Co. v. Houston, 5 Otto, 697; McCall v. R. R. Co. 54 N. Y. 642; R. R. Co. v. Hunter, 33 Ind. 235; Dodge v. R. R. Co. 34 Ia. 276; Pittsburg, etc. v. Krouss, 30 Ohio St. 222; Jefferson R. R. Co. v. Swift, 36 Ind. 459; C. R. R. Co. v. Teller, 84 Pa. St. 226; Salter v. N. & B. R. R. Co. 75 N. Y. 273; Alyn v. Boston R. R. Co. 105 Mass. 77; Tucker v. Duncan, 9 Fed. Rep. 867.

When it is apparent from plaintiff's own showing that he has no cause of action, it is the duty of the court to decide the question and not remand the cause: I. C. R. R. Co. v. Houck, 72 Ill. 285; C. & A. R. R. Co. v. Michie, 83 Ill. 427; C. R. I. & P. R. R. Co. v. Bell, 70 Ill. 102; T. W. & W. R'y Co. v. Jones, 76 Ill. 311; St. L. K. C. & N. R. R. Co. v. Purl, 73 Mo. 168.

Messrs. CHASE & O'SHAUGHNESSY, for appellee; as to what is due diligence in a party upon approaching a railroad crossing, cited Dimick v. C. & N. W. R'y Co. 80 Ill. 338; C. & N. W. R'y Co. v. Ryan, 70 Ill. 211; I. C. R. R. Co. v. Ebert, 74 Ill. 399; Brown v. N. Y. Cent. R. R. Co. 32 N. Y. 163; McGrath v. Hudson River R. R. Co. 32 Barb. 147; Davis v. N. Y. Cent. R. R. Co. 47 N. Y. 400; Duffy v. C. & N. W. R'y Co. 32 Wis. 268; Richardson v. N. Y. Cent. R. R. Co. 45 N. Y. 847; Warner v. Fitchburg R. R. Co. 8 Allen, 227.

If owing to obstructions, the bell or whistle can give no

warning of approaching trains, the railroad company must employ other means of giving warning: Roberts v. C. & N. W. R'y Co. 35 Wis. 680; Cordell v. N. Y. Cent. R. R. Co. 70 N. Y. 124; Morton v. Eastern R'y Co. 113 Mass. 366; Favor v. B. & L. R'y Co. 114 Mass. 350.

As to the duty of a railroad company in running its trains through a city: C. & A. R. R. Co. v. Engle, 84 Ill. 397; Wabash R'y Co. v. Henks, 91 Ill. 406; C. & A. R. R. Co. v. Gregory, 58 Ill. 226; Johnson v. Hudson River R. R. Co. 6 Duer, 641; Fero v. Hudson River R. R. Co. 22 N. Y. 211; Kelsey v. Barney, 2 Kern, 425; P. C. & St. L. R. R. Co. v. Knutson, 69 Ill. 106; I. C. R. R. Co. v. Mills, 42 Ill. 408; C. B. & Q. R. R. Co. v. Lee, 87 Ill. 454; C. & N. W. R'y Co. v. Ryan, 70 Ill. 214.

The negligence of a third party, concurring with that of defendant to produce an injury, is no defense: Cooley on Torts, 684.

It is not error to instruct on any issue made by the pleadings: Miller v. Balthasser, 78 Ill. 302; Kenney v. Crocker, 18 Wis. 80; Johnson v. Hudson River R. R. Co. 20 N. Y. 65.

As to measure of damages: Hunt v. Hoyt, 20 Ill. 544; Chicago v. Jones, 66 Ill. 349; T. P. & W. R. R. Co. v. Badley, 54 Ill. 19; I. & St. L. R. R. Co. v. Stables, 62 Ill. 313.

A verdict supported by the evidence and consonant with reason should not be disturbed: Hough v. Cook, 69 Ill. 581; Harkford v. N. Y. Cent. R. R. Co. 53 N. Y. 654; Thurber v. Harlem Bridge Co. 60 N. Y. 326; Wabash R. R. Co. v. Elliott, 98 Ill. 481.

LACEY, P. J. This suit was brought by appellee against appellant to recover for injuries received at the Sanger street crossing in the city of Peoria, by reason of the appellant negligently running its engine and train of cars and striking appellee while in the act of crossing with his team and wagon, and while in the exercise of due care and caution, by means of which he was greatly disabled and permanently injured. The appellee recovered the sum of $2,750.

Sanger street intersects Water street at right angles and there-

by forms Sanger street crossing, running along Water street and across Sanger street there are some thirteen tracks lying side by side. The upper one of these is appellant's switch, the next one appellant's main track on which the accident occurred. The next two are passenger P. & P. U. tracks, and the remaining ones, nine or ten, the P. & P. U. yard tracks. From the center of each to the center of the adjoining one is thirteen feet. The yard tracks are all connected by switches with the tracks in the yard. The yards are constantly in use for storing, switching and transferring freight cars from one part of the city to another and from one track to another.

At the time of the accident there were cars standing on both sides of the street at this crossing, and all these tracks, except the two upper tracks of the P. & P. U., known as the main tracks, and the main and switch tracks of appellant lying just north of them. On the seventh or eighth track a switch engine was moving cars to and fro near the Sanger street crossing, and on the main track of the P. & P. U., lying next appellant's main track and near the I. B. & W. junction, there was another switch engine with a lot of cars moving toward Sanger street crossing. At the time of the accident so much of Sanger street at this place as was taken up with the nine or ten P. & P. U. yard tracks was blocked by freight cars, except a narrow opening just wide enough for two wagons to pass, thus forming a sort of covered way which walled in appellee when crossing there, preventing his moving or seeing except in a forward direction as is claimed. The accident happened Nov. 10, 1881. The circumstances as detailed by appellee were that, he, with a friend of his, Charles Rabb, the latter driving and the former sitting at the hind end of the wagon, approached this crossing from the east or lower side with appellee's team and wagon loaded with meat which he was taking to a butcher's, the meat being between the two, and when they came to the crossing a switch engine was in their way and they stopped there. The switch engine backed and the watchman or flagman stood close to the engine, then ordered them to go ahead, with his arm indicating; he told his friend to drive on and he did so; he then heard the switch

engine puffing, and turning round saw it move and knew nothing more from that time.

The flagman denies that he motioned them to go on the crossing, but for the purpose of this decision it is not material as to who told the truth, as upon that point there was a conflict of evidence, and authorized an instruction based upon the supposed truth of appellee's statement.

It is claimed by appellee's counsel that after he had started to go in between the cars he used all the care in his approach to the appellant's crossing where the injury occurred that it was possible under the circumstances for a prudent man to do, and that he was not negligent in putting himself in so dangerous a position as to start across the track at the time, for the reason that he obeyed the signal of the flagman to start through this narrow passage.

On the other hand it is claimed that the appellee was negligent in attempting to cross the track without taking all precautions reasonably within his power to ascertain whether a train was approaching, such as looking in every direction that the rails run, to make sure that the road was clear and that he was not justified as a matter of law to alone rely on the care of the switchman who was not even an agent of the appellant but was employed by the city of Peoria. Under these circumstances the court gave the following instructions for appellee:

3. "If the jury find from the evidence that, at the time of the accident complained of, there was a public flagman stationed at said Sanger street crossing whose duty it was to keep said crossing as free as possible from danger to persons crossing thereover, and to prevent, as far as possible, accidents at such crossing; and if the jury further believe from the evidence, that the flagman, immediately before the plaintiff was injured, directed the plaintiff to cross over said crossing, the plaintiff would not be guilty of negligence if he started across under such circumstances, and used due care while crossing to avoid accident and danger; and if the jury further believe from the evidence that the plaintiff did so act, and that while so crossing over he used all reasonable care and diligence to avoid dan-

ger; and if they further believe from the evidence that while so crossing over, the plaintiff, in the use of all reasonable care and diligence, was struck by the train of defendant and injured; and if the jury further believe from the evidence that the defendant might have avoided such a collision by the use of reasonable care on the part of the servants in charge of such train, then, and in such case, the plaintiff is entitled to recover in this case."

Counsel for appellant cite various authorities to show that even if the flagman was the agent of the party against whom recovery was sought, it is not as a matter of law allowable for a party about to cross a railroad track to implicitly rely on the judgment of a flagman or watchman as to his safety in crossing, but aside from that he must use the prudence and caution that a reasonably prudent man would do under all the circumstances. The authorities are as follows, and seem to support the proposition: The Phila. Reading R. R. Co. v. Boyer, 97 Pa. 91; C. & A. R. R. Co. v. Randolph, 53 Ill. 510; Havens v. Erie R'y Co. 41 N. Y. 296; R. R. Co. v. Houston, 5 Otto, 697; McCall v. R. R. Co. 54 N. Y. 642; R. R. Co. v. Hunter, 33 Ind. 325; Doyle v. R. R. Co. 34 La. 276; Pittsburg, etc. R. R. Co. v. Krause, 30 Ohio St. 222; Jefferson R. R. Co. v. Swift, 36 Ind. 459; and the recent case of the C. B. & Q. R. R. Co. v. Sykes, 96 Ill. 160, may be added.

Seeing that the question of negligence is one of fact for the determination of the jury, and not of law for the court, it would seem improper for the court to instruct the jury that any particular fact or set of facts constituted due care or the want of it as applied to a given case. Lawful care, or due care as defined by law, means that degree of care that an ordinarily prudent person would use under the circumstances.

That is the standard by which the conduct of men seeking to recover damages where they claim to have been exercising care is to be governed. The circumstances of each case are susceptible of proof by witnesses who testify to what they have seen and know, the rest is a determination of the mind from those facts that an ordinarily prudent person would have so acted under the circumstances, or the reverse, and is deter-

mined in every case by the obtained experience in life of the men or party to whom the question is submitted.

According to our system of jurisprudence in civil cases the jury are to determine the questions of fact and the court all questions of law, with this limitation, that the verdict of the jury on a question of fact may be reversed whenever the trial judge or the appellate judges, in their experience as men and in their judgment as to the truth of facts proven, he or they determine in his or their own mind that the verdict of the jury on questions of fact is clearly contrary to the evidence and their or his experience. But this is not decided as a matter of law.

The Supreme Court were formerly authorized to pass upon questions of fact, and in the course of years in writing opinions in regard to questions of negligence have often stated that such and such facts constitute, in their judgment as men of experience, negligence or gross negligence, or that it was due care. These assertions and statements of the courts were taken up by attorneys, and whenever they would have a case on trial where the facts were similar to the one the court had commented on they would draw instructions in the language of the court and ask them to be given as law, which would sometimes be done, and on appeal to the Supreme Court have been sustained as law and sometimes cases reversed where they were not given.

As an example of this class of instructions the familiar one that where a party is approaching a railroad crossing and there is nothing to obstruct the view it is the duty of the party to look up and down the track to see if the cars are approaching, and if he fails to do so, and injury could have been avoided thereby, then he is guilty of negligence and can not recover. This is really not a question of law, but is a question of fact, and the conduct in that respect is to be squared by the experience of men as to whether a reasonably prudent man would, under such circumstances, look up and down the track. It is a simple matter of judgment, and ninety-nine men out of a hundred would say it was negligence not to do so, but it is not a matter of law any more

than ten thousand circumstances of a similar kind that might arise could be pronounced to be negligence or care as a matter of law. It is a matter of law in crossing any dangerous place that a person should exercise the foresight of a prudent man to avoid injury, but what those precautions should be is a matter of fact to be judged of according to the varying circumstances of each case.

But when the example was once set by giving instructions on such hypothesis every conceivable circumstance and situation would naturally be seized on and recited in an instruction, and courts would be asked to tell the jury if that were true the party was guilty of negligence. Often such hypothetical questions would very greatly puzzle the courts to know whether, as men of experience, they would deem it negligence, or not, if the facts were true. The Supreme Court often said it was a question of fact for the jury. Still there is some confusion on the subject.

That court, in the late case of Pennsylvania Coal Co. v. Conlan, 101 Ill. 93, has undertaken to clear up such confusion, and in delivering the opinion, Scholfield, J., says: "Expressions may frequently be found in opinions of this court, where, under our old practice act, we were required to review questions of fact as well as of law, that such and such facts were evidence of negligence—the expression of a conclusion of fact, not of law —from certain other admitted or proved facts. In such cases, and as to such questions, the court is exercising precisely the same functions as does a jury in the trial court, only, unlike the jury, giving its reasons for its conclusions, and it is this blending, in such cases, of the distinct and independent functions exercised by court and jury at *nisi prius*, that has occasionally misled counsel, and induced the belief that the court has declared the result of purely controverted questions of fact as conclusions of law." "It is the office of the judge to instruct the jury on points of law and of the jury to decide on matters of fact." Broom's Maxims (4 Ed.), 103, Sec. 77.

In the case of I. C. R. R. Co. v. Goddard, 72 Ill. 567, it was held that it was error on the part of the court below to refuse to instruct the jury, "that it is the duty of every per-

son when going upon or across a railroad track to look in each direction to see if cars are approaching and a failure to do so amounts to want of ordinary care," and the judgment was reversed for that among other reasons. In commenting upon this instruction the judge deciding cites the Gretzner case, 46 Ill. 76; the Manley case, 58 Ill. 300; the Jacobs case, 63 Ill. 178; the Bell case, 70 Ill. 102; the Godfrey case, 71 Ill. 500; and the cited cases are those where the court had expressed an opinion on the weight of the evidence in exercising the functions of a jury. The ruling in that case is not anywhere overruled that we are able to discover, but we do not think, regarding the tendency of the court to hold in all cases that questions of fact are for the jury and questions of law for the court, that the rule would be extended beyond that in the Goddard case.

Instructions Nos. 1 and 2, which are commented on by the court in the Canlon case above, are not set out in the opinion, but we have examined them, in the original abstract on file in the clerk's office, and find that No. 1 was as offered in substance: "That if deceased * * * knew, or ought to have known that defendant's train usually came north over the track where the accident occurred about the time it occurred, and that the deceased placed himself at such time on the said track with his back or side to the south and knew or should have known that the train was due about that time, then he was guilty of gross and culpable negligence, and the jury should find for defendant unless the defendant willfully ran him down, even if he was in the performance of his duty."

The 2d one was, "that it was gross negligence for a person to walk along or stand upon a railway track unless compelled to do so in the performance of his duty, * * * and if he willfully does so he assumes all the risk of the perils he may encounter, and if he was not compelled to go upon the track in the performance of his duties, and did so, the jury must find for the defendant unless the injury was willfully inflicted."

These are the instructions that the court say were properly refused because the question of negligence was one of fact.

The lawyer for the defendant had evidently borrowed the language of these instructions from the expressions of the Supreme Court in other decided cases where they were commenting on questions of fact.

We then conclude that the 3d of appellees given instructions was erroneous. Notwithstanding there might have been a switchman at the crossing, and notwithstanding he may have beckoned appellee to cross, it may have been perfectly apparent to any prudent person that it would have been very dangerous to cross, yet the instruction to the jury that if the flagman signaled him to cross he was not negligent in obeying, removed from their consideration all other facts tending to show negligence.

Negligence may be shown as all other facts by the surroundings of the accident. Then the latter part of the instruction does not confine the right of recovery to the negligence declared on in the declaration, which it should do.

We see no valid objection to the 2d of appellee's instructions. It is admissible under the amended third count in his declaration. We do not deem it necessary to notice any other objections. The judgment is therefore reversed and cause remanded.

Judgment reversed and remanded.