# Louisville & Nashville Railroad Co. *v.* Webb.

*Action for Damages against Railroad Company, for Personal Injuries.*

1. *Negligence in moving train backwards, at greater speed than prescribed; negligence of watchman, or flagman, at crossing.*—A municipal ordinance prohibiting, under penalty of a fine, the backing of a railroad engine at a greater speed than four miles an hour, is a reasonable police regulation, the violation of which is negligence, and renders the railroad company liable for damages at the suit of a person injured; and the failure of a watchman, or flagman, stationed at the intersection of the railroad with a street in the city, to attend to his duties, and to warn a person attempting to cross of the peril from an approaching train, when he might have discovered it by proper attention, is negligence, for which the railroad company is liable.

2. *Contributory negligence.*—A person attempting to cross a railroad track, at its intersection with a public highway, is required to use his senses of sight and hearing, in order to ascertain and guard against danger from approaching trains; and a neglect of this duty is, as matter of law, contributory negligence, which bars an action for damages; and the fact that the railroad's watchman was, as he saw, sitting ninety feet distant, with his flag across his lap, and, looking in the opposite direction, failed to warn him of the moving train, does not make it a question for the jury. (McCLELLAN, J., dissenting.)

[Louisville & Nashville R. R. Co. v. Webb.]

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. JAS. B. HEAD.

This action was brought by Benjamin T. Webb, against the appellant corporation, to recover damages for personal injuries sustained by plaintiff, who was struck and knocked down by an engine and tender on the defendant's road in one of the streets of Birmingham. The defendant pleaded not guilty, and contributory negligence, and issue was joined on these pleas. Under the rulings of the court, the trial resulted in a verdict and judgment for the plaintiff, for $13,000. The material facts proved on the trial, in relation to the circumstances under which the accident happened, are stated in the opinion. There was a conflict in the evidence, as to the rate of speed at which the engine was moving at the time plaintiff was struck. Plaintiff asked a witness, "In what distance could an engine be stopped, if running at the rate of twenty-five miles an hour? In what distance could an engine with a good brake be stopped, if running at the rate of five miles an hour?" The witness, who was a railroad engineer, answered, to the first question, "in about 65 or 70 feet;" and to the second, "in about eight feet." To each of these questions and answers the defendant objected and excepted. Another witness for the plaintiff, an eye-witness of the accident, having testified that he did not know how fast the engine was moving at the time, but it was running "much faster than a man can walk," was then asked to "state, if he knew, how many miles an hour a man can walk;" and answered, that "a man can walk about four miles an hour." To this question and answer, each, the defendant objected and excepted.

The defendant asked numerous charges to the jury, among which were the following: (1.) "The jury must find for the defendant, unless the evidence satisfies them that the injury to the plaintiff was inflicted by defendant's employés willfully, intentionally, wantonly, or recklessly." (2.) "The failure of the plaintiff to look both up and down the track, is not merely evidence of negligence, but is negligence of itself." (3.) "Recklessness means that reckless indifference to the rights of others which is equivalent to an intentional violation of them." (4.) "If the jury believe the evidence in this case, they can not find for the plaintiff, unless they believe from the evidence that the injury to him was inflicted recklessly, wantonly, willfully, or intentionally." (5.) "The undisputed facts in the case show that the plaintiff was guilty of negligence in not looking up and down the track, when he approached it so near as to come in collision with the locomotive." The court refused each of the charges asked, and the defendant duly excepted to their refusal.

The refusal of the charges asked, and the rulings on evidence above noted, are assigned as error.

HEWITT, WALKER & PORTER, for appellant.

JAS. J. BANKS, and CABANISS & WEAKLEY, *contra.*

STONE, C. J.—The injury in this case was suffered in the city of Birmingham, at a point on Twenty-fourth street, where the defendant corporation and the Alabama Great Southern Railroad cross that street, on tracks parallel with each other, and about eleven feet apart. The business house of plaintiff, Webb, was near the crossing, and he was familiar with the place, and with the fact that the two railroads crossed the street at that place. Both the testimony and the diagram attached to the transcript show that this crossing was within the area used by defendant for switching purposes, and that its switch-engine, in doing its work, frequently crossed at that crossing. Plaintiff was returning from his dinner to his place of business, about 2 o'clock, P. M., and in reaching his destination, must cross the tracks of the two railroads. When he first approached the crossing, there was a train standing on the track of the Alabama Great Southern, the track nearest to him, which extended partially across Twenty-fourth street, and blocked up the passway. He waited untill this train moved out of his way, which soon occurred. He then moved forward, approaching the track of the defendant corporation, and was in the act of stepping on its track with a view of crossing it, when he was struck by the tender of a switch-engine moving backwards, and received the injuries for which he sues. The defense is contributory negligence.

There was proof of an ordinance, of force in the city of Birmingham, which made it an offense punishable by fine, for any railroad company to permit a locomotive engine, running on its track within said city, to move at a greater rate of speed than eight miles an hour when moving forwards, and four miles an hour when moving backwards. There is a conflict in the testimony as to the rate at which the locomotive was moving when the injury was done, the several witnesses placing it all the way from six or eight miles, up to twenty-five miles an hour. The engine being moved backwards, the lowest estimate—six miles an hour—was in excess of the limit allowed by the ordinance. So, there was a conflict in the testimony as to the ringing of the bell, or other signal, required by statute to be given, while an engine is moving within a village, town or city.—Code of 1886, § 1144. It follows that these questions,

to the extent they were material, had to be solved by the jury.

Upon other questions there was no conflict, and we may state them as undisputed facts. They are chiefly taken from the testimony of the plaintiff himself, and, when not so taken, he does not controvert them. The defendant railroad company kept and maintained a watchman, at Twenty-fourth street crossing, to warn and signal persons of approaching danger; and when the injury in this case was inflicted, the watchman was at the crossing, but some ninety feet from the place of the injury. There was no obstruction between him and the plaintiff, nor between him and the approaching engine of defendant. The tender which struck the plaintiff was a high-tank tender, over which a person on the track in the direction it was being pushed, if within thirty feet of the tender, could not be seen by the engineer or fireman on the engine. As soon as the train on the Alabama Great Southern railroad moved off, or, at farthest, as soon as plaintiff crossed its track, the track of the defendant railroad, for a hundred yards or more each way, was opened up to his view, without any intervening obstruction. Several persons, ninety to one hundred and fifty feet away from him, saw his peril, and one of them hallooed to him. He himself testified that, in walking from one track to the other, he looked neither to the right nor to the left, and that he did not see the approaching engine or tender, until, when warned by the halloo, it was so near to him, that he could only partially escape the force of the collision, by throwing his body backwards. He testified further that, in walking from one track to the other, he was looking straight ahead at the flagman, who was sitting down with his flag across his lap, and looking in a different direction. There was some testimony that the flagman did signal him of his danger. In switching, the defendant corporation had frequent occasion to cross Twenty-fourth street at the crossing we have been describing. We have now summarized the facts deemed material to the questions to be discussed.

The question which was made a controlling one in the cases of *Sav. & Mem. R. R. Co. v. Shearer*, 58 Ala. 672, and *S. & N. R. R. Co. v. Sullivan*, 59 Ala. 272, does not arise in this case. There was a watchman and flagman stationed at the crossing, whose duty it was to maintain a look-out, and give notice of approaching danger.

The most favorable construction of the testimony fixes the charge of negligence on the defendant corporation. To back its engine within the limits of Birmingham, at a greater rate of speed than four miles an hour, was a violation of the city

ordinance on the subject, and placed the defendant in the wrong. That ordinance is a reasonable and humane police regulation, and ought to have been observed. This was negligence; and the greater the excess of speed over the authorized limit, the more pronounced and palpable would be the negligence. So, if the watchman was not attending to his duties, and failed to warn plaintiff of his peril, when with proper attention he would have discovered it, this too was negligence, for which the defendant corporation would be liable.

But there were duties resting on the plaintiff, as well as on the defendant. If he was guilty of negligence, which contributed proximately to the injury, then the law denies to him all right of recovery. The reason of this rule is obvious, and has been often expressed.

In *S. & N. Ala. R. R. Co. v. Thompson*, 62 Ala. 494, this court said: "It is the duty of travellers, approaching the intersection of a railroad with a public highway, to look out and listen for trains or engines; and a neglect of the duty, contributing to an injury, will avoid all right of recovery for it." In *Gothard v. Ala. Gr. So. R. R. Co.*, 67 Ala. 114, we quoted the following language without dissent: "As a general rule, it is culpable negligence to cross the track of a railroad at a highway crossing, without looking in every direction that the rails run, to ascertain whether a train is approaching. If a party rushes into danger, which, by ordinary care, he could have seen and avoided, no rule of law or justice can be invoked to compensate him for any injury he may receive. He must take care, and so must the other party."

In *Railroad Co. v. Houston*, 95 U. S. 697, the language of the court was: "The failure of the engineer to sound the whistle, or ring the bell, if such were the fact, did not relieve the deceased from the necessity of taking ordinary precautions for her safety. Negligence of the company's employès in these particulars, was no excuse for negligence on her part. She was bound to listen and to look, before attempting to cross the track, in order to avoid an approaching train, and not to walk carelessly into the place of possible danger. Had she used her senses, she could not have failed both to hear and see the train which was coming. If she omitted to use them, and walked thoughtlessly upon the track, she was guilty of culpable negligence, and so far contributed to her injuries as to deprive her of any right to complain of others." And in *Continental Improvement Co. v. Stead*, same volume, 161, that court said: "Those who are crossing a railroad track, are bound to exercise ordinary care and diligence to ascertain

whether a train is approaching. They have, indeed, the greatest incentive to caution, for their lives are in imminent danger if collision happen; and hence it will not be presumed, without evidence, that they do not exercise proper care in a given case. But, notwithstanding the hazard, the infirmity of the human mind in ordinary men is such that they often do manifest a degree of negligence and temerity entirely inconsistent with the care and prudence which is required of them—such, namely, as an ordinarily prudent man would exercise under the circumstances. When such is the case, they can not obtain reparation for their injuries, even though the railroad company be in fault. They are the authors of their own misfortune."

In *Durbin v. Oregon & Nav. Co.*, 32 Amer. & Eng. R. R. Cas. 149, "plaintiff had passed the crossing many times before, and was familiar with it. She had always used great care in looking for trains, but on this occasion she did not stop to look or listen. Her team came into collision with a passing engine, and she sustained considerable damage. *Held*, that the plaintiff was guilty of contributory negligence, and could not recover." Mr. Beach, Contributory Negligence, § 9, says, "It is tolerably well settled that, under such circumstances [crossing a railroad track on grade], a traveller must look up and down the track attentively, and a failure to do this is generally negligence as a matter of law."

We might add citations indefinitely, but consider the foregoing as sufficient. We regard the question as settled in Alabama, by our rulings cited above; and that a failure to employ the senses on approaching a railroad crossing, when such employment would insure safety, is, as matter of law, contributory negligence, and a complete defense to a suit for injuries sustained by the negligent handling of the railroad's train, unless such negligence was so reckless or wanton as to be, in law, the equivalent of willful or intentional wrong.—*Tanner v. L. & N. R. R. Co.*, 60 Ala. 621; *M. & C. R. R. Co. v. Copeland*, 61 Ala. 376; *Cook v. Cen. R. R. & B. Co.*, 67 Ala. 533; *Cen. R. R. & B. Co. v. Letcher*, 69 Ala. 106; 3 Brick. Dig. 672, §§ 25 *et seq.*

In *Louisville & Nashville R. R. Co. v. Crawford*, 89 Ala. 240, we defined the measure of wanton or reckless negligence which will overcome the defense of contributory negligence. We need not repeat it here. It is our intention to adhere to that doctrine.—*Leak v. Ga. Pac. R. R. Co.*, ante, p. 161.

The defendant asked separately thirty-six written charges, and they were severally refused; and a separate exception was reserved to each refusal. What we have said above will

show that, in many of these refusals, the Circuit Court erred. We need only mention the first five, each of which should have been given. It must not be understood, however, that in failing to comment on the other charges, we discover nothing in them to comment on. Our precise meaning is, that what we have said will furnish a sufficient guide on another trial.

Proving the distance a man can walk in an hour, was not the proper means of ascertaining the rate at which the engine was moving when the plaintiff was injured. This, however, could not have injured the defendant. It was only another method of testifying that the engine was moving at a greater rate than four miles an hour. There is nothing in the other objections to testimony.

[Dec. 9, 1890.   In response to application for re-hearing.]

STONE, C. J.—The foregoing opinion, and judgment reversing this cause, having been rendered at the last term of this court, a re-hearing was granted on the application of the appellee. In opening the case for further investigation, we were largely influenced by the frequent recurrence of the question, and by its great importance, alike to the travelling public and to railroad corporations. The industrious legal student can not have failed to discover the vast number of cases which have been before the courts, in which the pivotal question was substantially the same as that presented in the present record. Nor will he have failed to note the wide divergence, if not palpable conflict of opinion, which the various cases bring to view. All these considerations admonish us that the question we have in hand is one of great practical gravity. It has aroused the talents and learning, both of the bench and bar, on each side of the Atlantic.

Fortunately for us, we have not been left to grope our way unaided through this somewhat bewildering mass of adjudged law. Counsel on each side have displayed great learning and industry, both in collecting the authorities, and in arranging and classifying them. This we have attempted to supplement with such additional exploration as we could bring into exercise. Still we will not pretend that, in the very numerous authors and reported cases, some of which we propose to collate, and others merely to cite, we will have covered the whole field of possible investigation. Such attempt would swell this opinion beyond permissible dimensions.

The plaintiff himself, in his testimony, gave a very succinct, yet clear statement, of all he did, and all he did not do—all

he saw, and what he did not see—immediately preceding, and at the time he suffered the injury. The part he played, as given in our former opinion, is taken entirely from his testimony, and there was neither fact nor circumstance to weaken its force. We will state his testimony as facts.

When the train of the Alabama Great Southern moved out of his way, there was no obstruction between him and the track of the appellant. As soon as the receding train passed a few feet beyond him—at the latest when he crossed the track of the Great Southern—his view was unobstructed, up and down the track of the Louisville & Nashville, for a considerable distance. Had he looked, he could not have failed to see the approaching train, long before he endangered himself by his too near approach to its track. He testified that he looked neither to the right hand nor to the left, nor did he see the train until he was warned by the halloo, when it was too late to extricate himself. He testified that he was looking straight ahead at the flagman, some ninety feet distant, who, he said, was sitting down with his flag across his lap, and looking in a different direction. The collision occurred at 2 o'clock, P. M., while plaintiff was returning from his dinner.

As was said in the former opinion, there can be no question that the appellant railroad was guilty of negligence. It was within the corporate limits of Birmingham that the collision occurred, and every witness who spoke on the subject testified that the train, which was being pushed backwards, was moving at a faster speed than four miles an hour, the maximum limit fixed by the city ordinance. The testimony was in conflict on two other subjects of inquiry, namely : whether the whistle of the train was being blown, or the bell sounded, and whether the watchman was attentive to his duties. The solution of either of these inquiries against the railroad company fastened an additional act of negligence upon its employés. Hence, the inquiry in this case was, whether there was proximate contributory negligence on the part of the plaintiff, and whether the evidence of it was such, as that its sufficiency should have been charged on as a matter of law. The trial judge declined to pronounce on its sufficiency, and submitted it to the jury for their determination. This is the material question discussed in the re-argument, and to it we propose to confine what we have to say in reply thereto.

That the sufficiency of evidence to establish the charge of negligence, whether causative or contributory, is generally one of fact for the jury, is a proposition which can not, and should not be questioned.—*D. & M. R. R. Co. v. Steinberg,* 17 Mich. 99; *Kellogg v. N. W. Railway Co.,* 26 Wis. 228 ;

[Louisville & Nashville R. R. Co. v. Webb.]

*Eaton v. Erie Railway Co.*, 51 N. Y. 544; *McGrath v. N. Y. Cen. & H. R. R. R. Co.*, 63 N. Y. 522; *Greany v. L. I. R. R. Co.*, 101 N. Y. 419; *Palmer v. N. Y. Cen. & H. R. Co.*, 112 N. Y. 234; *Cen. R. R. Co. v. Moore*, 24 N. J. Law, 824; *Bonnel v. Del. L. & W. R. R. Co.*, 39 N. J. Law, 189; *Penn. R. R. Co. v. Ogier*, 35 Penn. St. 60; *Phil. & T. R. R. Co. v. Hagan*, 47 Penn. St. 244; *Penn. R. R. Co. v. Ackerman*, 74 Penn. St., 265; *Mahoney v. Met. R. R. Co.*, 104 Mass. 73; *French v. Taunt. Br. R. R. Co.*, 116 Mass. 537; *Craig v. N. Y., N. H. & H. R. R. R. Co.*, 118 Mass. 431; *Kennayde v. Pac. R. R. Co.*, 45 Mo. 255; *Logan v. St. L., I. M. & So. Railway Co.*, 72 Mo. 392; *Con. I. Co. v. Stead*, 95 U. S. 161; *C. & N. E. Ill. R. R. Co. v. Hedges*, 25 Amer. & Eng. Railway Cases, 550; *Spencer v. Ill. Cen. R. R. Co.*, 29 Iowa, 55; *C., C. & C. R. R. Co. v. Terry*, 8 Ohio St. 570; *Directors of M. Railway Co. v. Jackson*, 33 App. Cas. 193; *Directors of D. W. & W. Railway Co., Ib.* 1155; *Kelly's Case*, 75 Mo. 188; *Drain's Case*, 86 Mo. 574; *Stepp's Case*, 85 Mo. 229; *Peters' Case*, 9 Atl. Rep. 317; *B. & O. R. R. Co. v. Owings*, 65 Md. 502.

The doctrine of submitting questions of negligence to the jury has been more steadfastly maintained in Illinois, than in other States whose decisions we have examined.—*C. B. & B. R. R. Co. v. Triplett*, 38 Ill. 482; *Penn. Co. v. Frana*, 112 Ill. 586; *C. St. L. & P. R. R. Co. v. Hutchinson*, 120 Ill. 587; *C. & V. Ill. R. R. Co. v. O'Connor*, 119 Ill. 586; *T. H. & I. R. Co. v. Voelker*, 22 N. E. Rep. 20; *C. M. & St. P. Railway Co. v. Wilson*, 24 N. E. Rep. 555. The doctrine of comparative negligence prevails in Illinois, and it would seem that rulings in that State on the doctrine of contributory negligence should be less controlling with us, than the decisions of other States, which, like our own, repudiate that doctrine.

Cases may be found which hold that entering on a public crossing of a railroad track, without looking or listening, no matter how unobstructed the view, is not *per se*, and as matter of law, contributory negligence, which prevents a recovery, but that its sufficiency is a question for the jury.—*Ernst's Case*, 35 N. Y. 9; *Kennayde's Case*, 45 Mo. 255; *Tabor's Case*, 46 *Ib.* 353; *Robinson's Case*, 48 Cal. 409; 4 Amer. & E. Enc. of Law, 72, n. 2. It is generally held, and there is reason in it, that if intervening objects, such as an embankment, a deep cut, a hill, houses, trees and such like, cut off vision, this excuses the fruitless attempt to look, and necessarily remits the inquiry of contributory negligence to the jury.—*Beisiegel's Case*, 34 N. Y. 622; *Petty v. H. & St. J. R. R. Co.*, 88 Mo. 306.

In the following cases it was held, that if the railroad have

[Louisville & Nashville R. R. Co. v. Webb.]

a gate at the crossing, which is found open, or if it maintain a flagman, who gives no warning signal, this so changes the rule as to relieve the party who is injured in the attempt to cross without looking or listening, from the disabling imputation of contributory negligence as a presumption of law. These cases hold that, in a category such as this, the question of contributory negligence must be disallowed, or submitted to the jury for decision, dependent on the circumstances of the case. *Glushing's Case*, 96 N. Y. 676; *Schneider's Case*, 45 Ohio St. 678; *Stegemier's Case*, 118 Ind. 305; *West's Case*, 32 N. J. Law, 91; *C., M. & St. P. Railway Co. v. Wilson*, 24 N. E. Rep. 555; 4 Amer. & Eng. Encyc. of Law, 72, n. 1; *Directors of N. E. Railway Co. v. Wanless*, 7 Eng. & I. Ap. 12; *Cen. Trust Co. v. W., St. L. & P. Railway Co.*, Fed. Cir. Ct. (Mo.) 27 Fed. Rep. 159.

The later decisions have departed somewhat from the older rulings on the subject we have in hand. In the modern cases, many categories of fact are held sufficient to take from the jury the inquiry of contributory negligence, and direct that it be ruled on by the court as matter of law. Of course, to come within this rule, the testimony must be sufficient in itself to bring the true and complete state of the inculpating facts before the mind of the court, without the aid of inferences to be drawn, and there must be no conflict in the testimony which proves the conduct relied on as contributory negligence. If inferences are to be drawn to make the category complete, or if conflicting testimony which is pertinent and necessary to the inquiry is to be reconciled or weighed, these, in a law court, are functions of a jury, and can not be ruled on as matters of law.—4 Amer. & Eng. Encyc. of Law, 73, n. 2, and the authorities cited.

In the case of *Schofield v. C. M. & St. Paul Railway Co.*, 114 U. S. 615, it was decided that, "Where a person in a sleigh, drawn by one horse on a wagon road, approaching a crossing of a railroad track, with which he was familiar, could have seen the coming train during its progress through a distance of seventy rods from the crossing, if he had looked, from a point at any distance within six hundred feet from the crossing, and was struck by the train at the crossing and injured, he was guilty of contributory negligence, even though the train was not a regular one, was running at a high rate of speed, did not stop at a depot seventy rods from the crossing in the direction from which the train came, and did not blow a whistle or ring a bell between the depot and the crossing. On these facts, it was proper for the trial court to direct a verdict for the defendant." Of similar import are *Dodge v. B.*,

[Louisville & Nashville R. R. Co. v. Webb.]

*C. R. & M. R. R. Co.*, 34 Iowa, 276; *Reeves v. D., L. & W. R. R. Co.*, 30 Penn. St. 454; 4 Amer. & Eng. Encyc. of Law, 70, n. 2; Whitaker's Smith Neg. 386; 2 Shear. & Redf. Neg. § 476; Beach Con. Neg. § 16, and note 1 on p. 53.

In the case of *Young v. N. Y., L. E. & W. R. R. Co.*, 107 N. Y. 500, decided in 1887, the following is a synopsis of the facts and the decision: The accident occurred at a street crossing in the city of Binghampton. The railroad company maintained a double track at that place, the two tracks being separated by a space of seven feet,—about the same distance apart as the two tracks brought to view in the case before us. The plaintiff approached from the south, and found a train standing on the southernmost track, but parted into two sections, so as to allow persons to pass through. The plaintiff walked rapidly through the opening, did not look up the northern track, and was struck by a train coming in the opposite direction on that track, and was injured. The court, in delivering its opinion, said: "We must take the fact to be that he (the plaintiff) could not have seen the train until he passed over, or nearly over the south track. The north track was straight for at least half a mile toward the east, and the moment he got upon the middle of the space between the two tracks, he could have seen a train approaching from the east for that distance. He was walking very rapidly, perfectly familiar with the locality, and the use which was ordinarily made of the two tracks, and as he crossed through the opening between the parts of the standing freight train, instead of looking east from which a train would ordinarily come on that track, he looked to the west, and heedlessly stepped in front of the engine. As he passed over the north rail of the south track, a single glance to the east would have disclosed to him the approaching train, and he would have escaped injury. He was in a place of some peril in crossing these tracks, and should have taken some care to protect himself. He was in no danger from the train on the south track, for that was stationary. If that to some extent obstructed his view on the north track, there was so much greater reason for him to take an observation the moment he had crossed the south track, so as to see whether he could cross the north track with safety; and for not doing so, he is chargeable with contributory negligence, which bars his recovery." The judgment of the court, reversing the judgment of the trial court, was that plaintiff should have been non-suited; the court holding that he was guilty of contributory negligence, as matter of law.—s. c., 14 N. E. Rep. 434.

Of similar import to the foregoing are the following cases:

*Knapp's Case*, 113 N. Y. 606; *Marty's Case*, 35 N. W. Rep. 678; s. c., 32 Amer. & Eng. Railway Cases, 71; *Hearne's Case*, 50 Cal. 482; *Ally's Case*, 105 Mass. 77; *Matta's Case*, 69 Mich. 109; *Schilling's Case*, 71 Wis. 255; *Maher's Case*, 64 Mo. 267; *Fletcher's Case, Ib.* 484; *Hallihan's Case*, 71 Mo. 113; *Zimmerman's Case, Ib.* 476; *Henze's Case, Ib.* 436; *Powell's Case*, 76 Mo. 80; *Lenix's Case, Ib.* 86; *Taylor's Case*, 86 Mo. 457; *Glasscock's Case*, 73 Cal. 137; s. c., 14 Pac. Rep. 518; *Ecliff's Case*, (Ind.) 31 N. W. Rep. 180; *Harris's Case*, (Minn.) 33 N. W. Rep. 12; *Straugh's Case*, (Mich.) 36 N. W. Rep. 165; *Holland's Case*, 5 McCrary, (Cir. Ct. U. S.) 549; *Butterfield's Case*, 10 Allen, 532; *Grippen's Case*, 40 N. Y. 34; *Belton v. Baxter*, 14 Abb. Pr. N. S. 404; *Davis's Case*, 37 Kans. 743; s. c., 32 Amer. & Eng. R. R. Cases, 65.

In the case of *Greenwood v. Phila., W. & B. R. R. Co.*, 17 Atl. Rep. 188, decided in 1889 (s. c., 124 Penn. St. 572), the accident and injury occurred at a street crossing in the city of Chester. The opinion of the court was delivered by Paxson, C. J. He said: "At the railroad crossing, the company had for some time kept a watchman and safety-gates, which were lowered upon the approach of trains. Upon the night in question, when the hose-carriage approached the crossing, the gates were not lowered. They had become out of order that morning, and had not been repaired. The watchman displayed no light, and gave no warning. The hose-carriage did not stop as it approached the track, in order to afford an opportunity to look and listen, nor did it even slacken its speed, but continued on, and was struck by the train, and the plaintiff was thrown off the carriage and injured. Under such circumstances, does the case come within the familiar rule, 'stop, look, and listen?' It was strongly urged upon the argument, that the rule referred to does not apply, for the reason (a) that the plaintiff had a right to rely upon the fact that the safety-gates were up, and (b) that the said rule is not applicable to towns and cities, where trains are constantly crossing the streets. . . . . Conceding that the company was required to take extra precaution by reason of the gates being out of order, yet the plaintiff was also bound to do his part. He had no right to omit the ordinary precaution when approaching a railroad crossing, merely because he finds the gates up. Machinery of all kinds is liable to get out of order, and may do so just at the critical moment of the approach of a train. In all such cases, the safety of the travelling public requires that each party shall be held to the exercise of due care. Had this hose-carriage stopped near the crossing, instead

of rushing on at reckless speed, this accident would not have happened. The train could have been seen for one hundred feet before the crossing was reached. If the rule to stop, look and listen were always observed, an accident at crossings, now so frequent, would rarely occur, whether in town or country. . . . The rule itself is so valuable, is sustained by such abundant authority, and is, moreover, founded upon such excellent common-sense reasons, that we will neither depart from it, nor allow it to be undermined by exceptions. It is a clear and certain rule of duty, and a departure from it is more than evidence of negligence. It is negligence *per se*." The trial court had, as matter of law, instructed the jury to find for the defendant, and the Supreme Court affirmed the decision.

We are not inclined to approve this case in full. The open gate was, to some extent, an invitation to cross; enough so, it would seem to us, to raise a question for the jury. But we need not, and do not decide this.

In the case of *Dublin, N. & W. R. R. Co. v. Slattery,* a case before the English House of Lords, reported to L. R. 3 Appeal Cases, 1155, decided in 1878, Lord Chancellor Cairns said: "If a railway train, which ought to whistle when passing through a station, were to pass through without whistling, and a man were, in broad day-light, and without anything, either in the structure of the line or otherwise, to obstruct his view, to cross in front of the advancing train, and to be killed, I should think the judge ought to tell the jury that it was the folly and recklessness of the man, and not the carelessness of the company, which caused his death."

In the case of *Davey v. L. & S. W. Railway Co.,* 11 Q. B. Div. 213—decided in 1883—Lord C. J. Coleridge delivered the opinion of the court. In that case, as in this, there were two parallel tracks near each other, and the injury was suffered in the attempt to cross the second of the tracks. Pending the argument, the Lord Chief Justice inquired, "Is it not using ordinary care to presume that, when there is no obstacle to vision, people will look to see if a train is coming?" Counsel replied: "In the present case there was evidence of circumstances amounting to something in the nature of an invitation to the plaintiff. He is lulled into false security, and led to think that no train is expected, by the fact that the servant of the company, whose duty it is to attend at the crossing, gives him no warning." The Lord Chief Justice, in delivering the opinion of the court, said: "Now, it seems to me clear, upon the uncontradicted evidence of the plaintiff himself, that he himself caused the accident by walking straight into a train which he might have seen. There is a double line of rails.

He comes first upon the down line upon which the train is not coming. There is then the width of the down line, and the interval between the two sets of rails, between him and the danger. If he had only taken the precaution of looking to the left along the up line, while crossing over this space, he must have seen the coming train. He did not look to see what was plainly to be seen approaching, and, in consequence, he walked straight into the danger." The trial court had ruled, as matter of law, that the plaintiff could not recover, and the Queen's Bench Division affirmed the decision.

The case was again heard in the Court of Appeals—12 L. R. Q. B. Div. 70—and the judgment again affirmed.

In the case of *Woodward v. N. Y. & L. E. & W. R. R. Co.*, 13 N. E. Rep. 424, decided in 1887—s. c., 106 N. Y. 369—the head-note fully sets forth the principle decided, as follows: "Deceased, while walking on a street crossed by six tracks of defendant company, was struck by some cars which had been shunted down the grade, and were running by their own momentum. It appeared that deceased was well acquainted with defendant's custom of running cars down the track, which was a switch. The accident happened about noon of a clear day, and the deceased might have seen and avoided the cars by looking up the track on which they were running, and which was the first track to be crossed by him. He appears to have been watching some cars which were leaving the crossing on the third and fourth tracks. *Held* contributory negligence, and defendant was entitled to a non-suit."

To substantially the same effect are *Ormsbee's Case*, 14 R. I. 102; s. c., 51 Amer. Rep. 354; *Lenix's Case*, 76 Mo. 86, decided in 1882; *Schilling's Case*, 71 Wis. 255, decided in 1888; Beach. Con. Neg. § 13; 4 Amer. & Eng. Encyc. of Law, 73, n. 1.

In reference to the liability of railroad corporations for injuries done to persons, as to all other similar agencies, the rule of vigilance and diligence exacted of corporations and of persons exposed to peril is mutual, and of equal degree. It is that measure of watchfulness which persons of ordinary prudence exercise in similar conditions of hazard. A railroad track, on which trains are likely to run at any time, is to some extent a warning. It is common knowledge that, unlike persons on foot, or employing the private modes of travel, railroad trains in motion can not be instantly brought to a stand-still. Hence the reasonableness of the rule, that persons about to cross a railroad track shall look and listen for an approaching train, before attempting to cross. It is a rule in favor of human life, and of human safety, and if thoughtfully observed, would

[Louisville & Nashville R. R. Co. v. Webb.]

render injuries of the kind here complained of almost, if not quite impossible.

It is contended for appellee, that because the railroad's watchman was in sight, and gave no warning, this was an invitation to him to proceed on his way, and either acquitted him of all imputation of negligence, or, at least, left it a question for the jury. If the watchman had signaled the plaintiff to advance, or, having his attention directed to him, had done any affirmative act inviting his forward movement, we would hold this would be a perfect answer to all imputation of contributory negligence, unless it was shown the plaintiff had knowledge of the approaching train. If, during the short interval elapsing between the moving of the train on the Alabama Great Southern's track, and the approach of the plaintiff to the Louisville & Nashville's track, the watchman's attention had been attracted to the plaintiff, and he had given no warning or signal of danger, we will not say this would not absolve the plaintiff from the absolute imputation of contributory negligence, such as may be ruled on as a conclusion of law. The inquiry whether, in such condition, the watchman would have time to take in the situation and give the warning, would, it would seem, present a question to be solved by the jury.

In the present case, as testified by the plaintiff himself, he advanced immediately on the moving of the Alabama Great Southern's train, looked neither to the right nor to the left, but kept his eye on the watchman, who, he saw, was looking away from him, and of course did not see him. This was, in no sense, an invitation to him to advance, and did not relieve him of the duty of looking and listening before attempting to cross the track of the Louisville & Nashville railroad.

We adhere to our first opinion.—*Thompson's Case*, 62 Ala. 494; *Gothard's Case*, 67 Ala. 114; *Crawford's Case*, 89 Ala. 240; *Leak v. Ga. Pac. Railway Co.*, ante, p. 161.

Reversed and remanded.

McCLELLAN, J. (Dissenting.)—I concurred in the original opinion handed down in this case at the last term, and this too upon full discussion in consultation of the bearing which should be accorded the attitude of defendant's watchman on the question of plaintiff's negligence. A further consideration of that matter, however, on the application for rehearing, constrains me now to dissent from the conclusions then and now reached by the court. My dissent proceeds in line with the criticism visited upon the case of *Greenwood v. Phila., W. & B. R. R. Co.*, in the opinion of the Chief Justice. In that case, it was the duty of an employè of the defendant company to have the

gates down at the time of the accident. The failure to discharge this duty, the fact, from whatever cause, that the gates, which should have been closed on the approach of a train, were on the occasion in question left open, was, according to the intimation of the Chief Justice, in the nature of an invitation to the plaintiff to cross—an assurance to him that no train was approaching—in such sort as to make the question of his negligence *vel non* one of fact for the jury. Here, it was the duty of an employè of the defendant to keep an outlook for trains, to know when they were approaching, and to interpose a bar, when that was the case, to the further progress of persons about to cross the track, in the shape of a signal warning them of the danger. It was this flagman's duty, not only to know that a train was approaching, but to see, in that contingency, all persons about to come upon the track. This duty, so far from being relieved by the fact that a train had been standing on or passing along the further track from the watchman, was accentuated thereby, since it was but reasonable to suppose that there would be travellers whose progress had been impeded by it, waiting to cross as soon as it was moved out of the way. All presumptions are favorable to the discharge of duty. The presumption here was, that if a train was approaching, the flagman, whose duty it was to know the fact, did know it. The further presumption is, that knowing that fact, he would discharge his further duty of warning the plaintiff of it. The plaintiff, seeing the flagman at his post, and receiving no intimation from him that it was dangerous to cross, may have been very naturally lulled into a sense of the safety of the attempt he was about to make. He had a right to assume that the watchman was discharging the functions of his position, and that his attitude at the moment of the disastrous attempt to cross was in the nature of an assurance that it was safe to cross, and an invitation for him to do so. The attitude of the employè was inexplicable upon any other hypothesis, which would be consistent with the duty he owed plaintiff, and which plaintiff was authorized to presume he would discharge, and was discharging at the moment he went upon the track. I can not escape the conclusion that, in view of the watchman's attitude, importing in some sort an assurance of the absence of danger, calculated to allay circumspection on the part of the plaintiff, the question of contributory negligence should have been, and was properly, submitted to the jury, although the evidence is without conflict that plaintiff failed to stop, to look and to listen.