# Ga. Pacific Railway Co. *v.* Lee.

*Action against Railway Company, for Damages to Wagon and Mules.*

1. *Contributory negligence by person attempting to cross railroad track.* A person on foot, approaching a railroad crossing, is required to look and listen before attempting to cross, and his failure to do so is contributory negligence, which will defeat a recovery in an action for damages; and equal care is required of a person who is driving in a vehicle, except that, having stopped and listened on approaching the track, where his view was obstructed by a train of cars standing on a side track, he can not be said to be guilty of contributory negligence, as matter of law, because he did not leave his vehicle, and go to a point where he could see that the track was clear: in such case, the question of contributory negligence must be submitted to the jury.

2. *Same; gross negligence defeating contributory.*—The defense of contributory negligence, though established by the evidence, is overcome and defeated by proof of such gross negligence, such recklessness or wantonness, as is the legal equivalent of willful or intentional wrong; as by the failure to use all reasonable efforts to avoid the injury, when plaintiff's perilous position was discovered in time to prevent injury by the exercise of due care and diligence; but not the mere running at a high rate of speed, at a crossing which is not in a populous district, nor the failure to give the statutory signals on approaching, nor the failure to keep a proper look-out, nor other mere omission of duty under circumstances showing mere negligence, as distinguished from recklessness or wantonness.

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

This was an action by R. N. Lee, against the appellant railway corporation, to recover damages for the killing of two mules and the destruction of a wagon, the property of the plaintiff, which was caused by the alleged negligence of the defendant's employès, in the management of a train, which

| | |
|---|---|
| 92 | 262 |
| 93 | 148 |
| 93 | 210 |
| 93 | 421 |
| 93 | 525 |
| 92 | 262 |
| 94 | 589 |
| 92 | 262 |
| 95 | 429 |
| 92 | 262 |
| 96 | 268 |
| 97 | 293 |
| 97 | 303 |
| 97 | 310 |
| 97 | 353 |
| 92 | 262 |
| 99 | 407 |
| 99 | 513 |
| 92 | 262 |
| 100 | 366 |
| 100 | 496 |
| 100 | 620 |
| 101 | 233 |
| 92 | 262 |
| 103 | 139 |
| 103 | 173 |
| 104 | 517 |
| 105 | 606 |
| 92 | 262 |
| 109 | 304 |
| 109 | 334 |
| 110 | 331 |
| 92 | 262 |
| 113 | 650 |
| 114 | 499 |
| 114 | 594 |
| 92 | 262 |
| 116 | 514 |
| 116 | 646 |
| 117 | 382 |
| 117 | 386 |
| 117 | 387 |
| 92 | 262 |
| L121 | 228 |
| 121 | 498 |
| 121 | 499 |
| 92 | 262 |
| f124 | 116 |
| 124 | 375 |
| 124 | 625 |
| 92 | 262 |
| 131 | 595 |
| 92 | 262 |
| 135 | 621 |
| 92 | 262 |
| p136 | 287 |
| 136 | 353 |
| 136 | 583 |

collided with the plaintiff's mules and wagon. The facts are sufficiently set out in the opinion.

Upon the evidence as adduced the court in its general oral charge to the jury, charged them, among other things, as follows: "If it appears that the road on which the driver was crossing the railroad was a public road, and that they would have discovered a person in peril on the track, by the use of proper diligence in keeping a lookout, in time to have avoided the accident by the use of all proper means to stop the train, and that they failed to keep such a proper lookout, in that event they would be liable for injuries proximately resulting from such negligence; if the jury should further find that the driver used due diligence in extricating himself and wagon and team after he discovered the danger, because the duty is resting upon those in charge of the train to keep a lookout in such places, and it is not permitted them to shut their eyes, and then say the person on the track ought himself to keep a lookout for the train before going upon the track, and that they did not see him and are therefore excusable." The court also charged that, " if it appears to the jury that this was a public road crossing, and that they [the employès] saw the peril of the person upon the track, or if they had been diligent would have seen him upon the track and discovered his peril, in time to avoid the accident, then the plaintiff would be entitled to recover for injuries proximately resulting from such negligence, provided he used proper diligence to escape injury after being apprised of his danger." And again, as follows: "A person going upon the track under such circumstances and at such crossing is not chargeable with contributory negligence, provided he tries to get out of the way, in cases where it appears that the railroad's servants saw him in peril and failed, on their part, to use all the proper means to stop the train and avoid the accident; or when it appears that they would have seen the person, if they had been using proper caution in respect to keeping a lookout, in time to have avoided the accident." The defendant separately excepted to each of these parts of the general charge.

At the request of the plaintiff in writing the court gave the following charges: (1.) "If the jury believe that the injuries occurred at a public road crossing, and that such injuries could have been avoided by the defendant's servants on said train keeping a diligent lookout, then the plaintiff would be entitled to recover, if the driver of the team attempted to escape after discovering his peril." (2.) "If the jury believe from the evidence that the injuries testified about occurred at a public road crossing, and if they further believe that the bell was not

rung or whistle blown at intervals while the train was approaching the crossing, and that such failure to give such signals essentially contributed to bring about such injuries, then the plaintiff would be entitled to recover unless the jury further believe that the driver of the team was guilty of contributory negligence in going on the track, and the plaintiff would be entitled to recover, notwithstanding such negligence, if the injuries were inflicted recklessly, wantonly, or intentionally." (5.) "Even though the jury may believe that the defendant's servants used all means within their power to avert the injury after the peril of the plaintiff's team was discovered by them, yet if they further believe that the defendant's train which inflicted the injury (if the injury was inflicted by such train) was being run and conducted by the defendant's servants in a recklessly negligent manner, and that injury to plaintiff's team proximately resulted therefrom, then the jury must find for the plaintiff, even though they should believe that the driver of the team was guilty of negligence in going upon said railroad, if such driver used all means in his power to get the team out of the reach of danger after discovering his peril."

The defendant excepted to the giving of each of these charges; and also to the refusal of the court to give each of the following charges, which were asked among many others, for the defendant: (4.) "If the jury believe from the evidence, that the driver of the wagon failed to stop and look and listen before he attempted to cross the defendant's tracks, and that but for such failure the injury would not have happened, then the plaintiff can not recover; unless you further believe from the evidence that the defendant's servants in charge of the train, after observing the peril of the wagon and team and occupants of the wagon, wantonly, recklessly or intentionally inflicted the said injury." (5) "If the jury believe from the evidence that the manifestation of the peril of the wagon and team and occupants of the wagon, and the collision between them and the train, was so close, in point of time, that the train could not have been stopped in time to have avoided the collision, then the defendant's agents in charge of said train can not be deemed guilty of wanton, reckless or intentional misconduct." (11) "Neither the placing of the cars on the side track, or side tracks, as shown by the evidence, nor a failure to ring the bell of the engine, or blow the whistle, nor the speed of the train, before the peril of the team and driver became manifest, or ought to have been manifest, under the evidence, is evidence of wanton, reckless or intentional misconduct on the part of defendant's servants."

There was judgment for the plaintiff; and the defendant now brings this appeal, and assigns as error the giving of the oral charge by the court, and the rulings of the lower court upon the charges, requested by plaintiff and defendant.

JAMES WEATHERLY, for appellant, cited *L. & N. R. R. Co. v. Webb*, 90 Ala. 185; *L. & N. R. R. Co. v. Crawford*, 89 Ala. 240, and authorities cited.

CABANISS & WEAKLEY, and LANE & WHITE, *contra*.

McCLELLAN, J.—This is an action for injury to a wagon and team by collision therewith of a train of the defendent—appellant—railway company at a road crossing. The collision occurred at the intersection of 6th Avenue and 27 street. This street, for at least a block on either side of said Avenue, is occupied entirely by three tracks of the defendant's railroad; and the Avenue, which is not opened beyond these tracks, if indeed it extends any further than the line of the street next to the city, constitutes at most a public road crossing which branches off to the right and left as soon as the tracks are cleared. The middle is the main track, and the side track on either hand is only a few feet from it, just far enough, it seems, for passing cars to safely clear each other. The railroad ran north and south. Plaintiff's wagon approached the crossing by a road which ran parallel with the railroad on the east, and within fifteen or twenty feet of the east side track, and turned sharply to the west opposite the crossing. On the side-track next to this road, and extending up to the crossing, cars were standing; but whether they were flat cars or box cars, and consequently whether the driver of plaintiff's wagon could see moving cars on the main track over them, the evidence is conflicting. The evidence is also in conflict as to whether the driver stopped at all near, and before going upon, the crossing. Plaintiff's evidence tends to show that just before turning into the crossing and when within twenty-five or thirty feet of the point where the main track crosses the roadway, the driver stopped for the purpose of sending back about one hundred feet for some articles which he had left, and while awaiting the return of his errand man, he listened for approaching trains, but that he could not see the main track, or whether any train was approaching on it, because of intervening box cars on the side track; and that upon the return of his messenger, hearing no noise as of moving cars, he drove immediately into the crossing and on to the main track, and did not and could not see the train which was being backed along

that track from the direction in which the cars on the side track extended, until he had gotten past the end of the box car next to the road he was travelling, by which time his mules were on the main track, where they were almost instantly struck by the cars which were being driven along there by an engine at the other end of the train, several hundred feet away. On the other hand, defendant's evidence goes to show that the driver did not stop at all on approaching the crossing, either to listen or look for moving cars, but drove heedlessly upon the main track in front of the train, and had he looked he might and would have seen the train, and had he listened he would have heard it, and thus been apprised of the danger in time to have averted the disaster. The evidence was also conflicting as to defendant's negligence, tending to show, in one aspect, that signals with bell and whistle were omitted, and that a very negligent rate of speed was maintained, and, in the other, that the train was moving at a slow pace and the usual and requisite signals were given. There was no evidence that the trainmen saw the wagon and team approaching the track in time to have stopped the train short of the point of collision, nor does it appear that they omitted any effort to that end after they became aware of the peril of the wagon, mules and driver. There are conflicts in the testimony as to whether the trainmen could have seen the wagon before it went upon the crossing, as to signals, and as to the rate of speed at which the train was being run when the wagon was first seen by the employés of the defendant—the witnesses varying from four to twenty miles per hour.

The defenses relied on were the general issue and the contributory negligence of the plaintiff's driver. The rulings of the trial court, which are presented for review, relate only to the defense of contributory negligence, and matters in replication thereto, the position of plaintiff being that there was evidence tending to show such gross negligence on the part of defendant's employés as would entitle him to a recovery, notwithstanding the driver's own negligence may have contributed to the injury.

The evidence as to whether the driver stopped at all as he approached the crossing, is, as we have seen, conflicting. One aspect of the testimony goes to show that he did not stop or pause to look or to listen before driving on the crossing, and that had he done so, he could have both seen and heard the approaching train, and easily have avoided the collision. If this tendency of the evidence involved the real facts, there can be no question but that the driver was so wanting in due care as to deprive the plaintiff, to whom the driver's

negligence is imputable, of all right to recover for simple negligence ·on the part of the defendant. No principle is now more firmly established in our jurisprudence, it may be said, than that which fastens upon persons about to go upon or cross over the track of a railway, under ordinary circumstances, the absolute duty of stopping and looking and listening for approaching trains; and this duty, subject to a modification to be noted further on, is as incumbent on persons in vehicles as upon those on foot.—*Schofield v. V. C. M. & St. Paul R'wy. Co.*, 114 U. S. 615; *Leak v. Ga. Pac. Rwy. Co.*, 90 Ala. 161; *L. & N. R. R. Co. v. Crawford*, 89 Ala. 240; *L. & N. R. R. Co. v. Webb*, 90 Ala. 185.

Another phase of the evidence goes to show that plaintiff's driver stopped the wagon just before turning into the crossing, and when within twenty-five or thirty feet of the intersection of the main track and the road along which he was travelling, for the purpose we have stated, and, remaining stationary at that point for some moments—minutes perhaps—listened the while for moving cars, but did not look along the main track because of the intervening box cars to which we have referred; and, hearing nothing to indicate peril in the attempt to pass over, he drove upon the crossing and came in collision with the train. On this aspect of the evidence, if the driver did stop, and listen so near to the main track at the point of its crossing the road as to readily avail himself of the assurance of safety conveyed to him by the absence of any noise indicating the approach of cars—so near as that the situation thus indicated could not and would not have an element of danger injected into it between the time of setting his vehicle again in motion and the time of passing over the track—we can not affirm as a matter of law that the duty was upon him to also look along the track before attempting to cross it, a duty which could only be discharged in this instance, and on this tendency of the evidence with respect to supervening box cars, by going in front of the mules and passing around the end of the car on the side track next to the road. We are not prepared to assert, as a legal proposition, that his failure to alight from the wagon and, leaving it, go to a point from which he could see along the main track, which the testimony tends to show was the only feasible means of viewing that track, was negligence which would bar plaintiff's recovery for simple negligence on the part of the defendant. The driver could not see an approaching train while he continued with the wagon on its course until too late to have averted the disaster. It was not with him to merely turn his head and look to the right and left, as with a person on foot, and to draw back or go for-

ward accordingly as the situation then presented itself; but as he went on his way, the peril was incurred and impending— he had reached a point from which he could not draw back— before the true situation uncovered itself to his vision. We do not believe it is the custom of prudent men in approaching such crossings under ordinary circumstances in a vehicle to do more than stop and listen; and to look only when that may be done without alighting from, and without leaving, their conveyances. We do not think that the exercise of due care requires such travellers, under all circumstances, to abandon their teams and go in advance sufficiently near the track to see along its course, and then resume their vehicle, and attempt a crossing which, perhaps, has become perilous by reason of their delay while taking this precaution against peril, or which might become so in the interval while they are regaining their conveyance after viewing the track. Moreover, instances may easily be supposed in which it is impracticable to secure a restive or wild team while the driver goes forward to reconoiter, and in which the danger from leaving it would be more imminent than that involved in attempting a crossing with only the assurance of one's ears as to its safety. With persons on foot, the case is quite different, and palpably so. An instant suffices for them to survey the track, and to act upon such survey. To do so involves no endangering delay and no inconvenience at any time or under any circumstances. While re-affirming the doctrine of the cases *supra* as to foot travellers, we are not prepared to announce as a proposition of law that plaintiff's driver was guilty of contributory negligence under the facts, which one phase of the evidence tends to support, in failing to gain a point of view which commanded the main track, and adding the assurance of one sense to that of another that no train was approaching, before attempting to cross. The logic of this position is eminently satisfactory, we think, and it is not lacking in the support of adjudged cases—though there are authorities on both sides of it—including an expression in the leading case of *L. & N. R. R. Co. v. Webb*, 90 Ala. 185, 193. See also *Beiseigel's Case*, 34 N. Y. 622; *Petty v. H. & St. J. R. R. Co.*, 88 Mo. 306, there cited, and *P. & R. R. R. Co. v. Carr*, 99 Pa. St. 505; s. c. 6 Am. & Eng. R. R. Cas. 185; *Lehigh etc. Rwy. Co. v. Lear*, 32 Am. & Eng. R. R. Cas. 74; *Donohue v. St. Louis etc. Rwy. Co.*, 28 Am. & Eng. R. R. Cas. 673; *Pittsburg etc. R. R. Co. v. Mootin*, 8 Am. & Eng. R. R. Cas. 253; *Artz v. Chicago R. R. Co.*, 34 Iowa, 160.

It was for the jury to determine under all the circumstances whether the driver was negligent in not looking up and down the main track before attempting to cross it. If there were

other noises calculated to deaden the noise of an approaching train, it was more incumbent on the driver to look as well as to listen. If it were a part of defendant's line where trains were wont to start near the crossing so that after having listened at some distance from the crossing and heard nothing a train might be set in motion so as to collide with his vehicle at the crossing, there would be more reason in requiring the driver to see there was no train near by which might be suddenly started. Then, too, the character of the team might be a pertinent inquiry, and whether it was safe to leave it loose, or feasible to secure it, or leave it in charge of another while viewing the road. These and many other like considerations, serving to mark the lines of due care, on the one hand, and a want of it, on the other, in particular cases, will readily suggest themselves; and the occasion to keep them in view demonstrates the necessity of submitting the whole question on contributory negligence in this case to the jury.

If the jury believed that part of the testimony in this regard which is most favorable to the defendant their conclusion that the driver was guilty of contributory negligence necessarily resulted. And they might have reached the same conclusion, it was open to them to do so, even on plaintiff's evidence. So finding they should have returned a verdict for the defendant, unless its employés were guilty of such gross negligence, such recklessness or wantonness, as is the legal equivalent of willful or intentional wrong.

Many of the rulings of the trial court in defining the gross negligence, recklessness or wantonness on the part of the defendant, which will authorize recovery, notwithstanding plaintiff's contributory negligence, are presented for review. The fault in the court's definitions in this regard lies, in our opinion, in the assumption that recklessness or wantonness implying willful and intentional wrong-doing may be predicated of a mere omission of duty, under circumstances which do not, of themselves, impute to the person so failing to discharge the duty a sense of the probable consequences of the omission. The charges given by the court in this connection, and its rulings on charges requested by the defendant, proceed on the theory that a mere failure on the part of defendant's employés to see plaintiff's wagon and team as soon as they might have seen them by the exercise of due care was such recklessness or wantonness as implies a willingness or a purpose on their part to inflict the injury complained of. We do not think this proposition can be maintained either logically or upon the authorities. The failure to keep a lookout, which it was the duty of defendant's employés to maintain, and which would

have sooner disclosed the peril of the driver and plaintiff's wagon and team—even conceding that such would have been the case—was, at the most, mere negligence, inattention, inadvertence; and it can not be conceived, in the nature of things, how a purpose to accomplish a given result can be imputed to mental conditions, the very essence of which is the absence of all thought on the particular subject. To say that one intends a result which springs solely from his mind not addressing itself to the factors which conduce to it, to imply a purpose to do a thing from inadvertence in respect of it, are contradictions in terms. Willful and intentional wrong, a willingness to inflict injury, can not be imputed to one who is without consciousness, from whatever cause, that his conduct will inevitably or probably lead to wrong and injury. In the case at bar, this consciousness could not exist on the part of defendant's employés until they knew plaintiff's wagon and team were in a position of danger; and no degree of ignorance on their part of this state of things, however reprehensible in itself, could supply this element of conscious wrong, or reckless indifference to consequences, which, from their point of view, would probably or necessarily ensue.

The true doctrine, and that supported by many decisions of this court, as well as the great weight of authority in other jurisdictions, is that notwithstanding plaintiff's contributory negligence he may yet recover, if, in a case like this, the defendant's employés *discover the perilous situation in time to prevent disaster by the exercise of due care and diligence, and fail, after the peril of plaintiff's property becomes known to them as a fact*—and not merely after they should have known it—*to resort to all reasonable effort to avoid the injury.* Such failure, with such knowledge of the situation and the probable consequences of the omission to act upon the dictates of prudence and diligence to the end of neutralizing plaintiff's fault and averting disaster, notwithstanding his lack of care, is, strictly speaking, not *negligence* at all, though the term "gross negligence" has been so frequently used as defining it that it is perhaps too late, if otherwise desirable, to eradicate what is said to be an unscientific definition, if not indeed a misnomer; but it is more than any degree of negligence, inattention or inadvertence—which can never mean other than the omission of action without intent, existing or imputed, to commit wrong —it is that recklessness, or wantoness, or worse, which implies a willingness to inflict the impending injury, or a willfulness in pursuing a course of conduct which will naturally or probably result in disaster, or an intent to perpetrate wrong. The theory of contributory negligence, as a defense, is that, conjointly

with *negligence* on the part of the defendant, it conduces to the damnifying result, and defeats any action, the *gravamen* of which is such negligence. If defendant's conduct is not merely negligent, but worse, there is nothing for plaintiff's want of care to contribute to—there is no lack of mere prudence and diligence of like kind on the part of defendant to conjunctively constitute the efficient-cause. Mere negligence on the one hand can not be said to aid willfulness on the other. And hence such negligence of a plaintiff is no defense against the consequences of the willfulness of the defendant. But nothing short of the elements of actual knowledge of the situation on the part of defendant's employès, and their omission of preventive effort after that knowledge is brought home to them, when there is reasonable prospect that such effort will avail, will suffice to avoid the defense of contributory negligence on the part of, or imputable to, the plaintiff.—Beach on Contr. Neg., pp. 66, 67, 68; *Tanner v. L. & N. R. R. Co.*, 60 Ala. 621; *Gothard v. A. G. S. R. R. Co.*, 67 Ala. 114; *L. & N. R. R. Co. v. Crawford*, 89 Ala. 240; *Leak v. Ga. Pac. R. R. Co.*, 90 Ala. 161; *L. & N. R. R. Co. v. Webb*, 90 Ala. 185; *M. & E. R. R. Co. v. Stewart*, 91 Ala. 421. Certain parts of the court's general charge to which exceptions were reserved, and its action in giving charges numbered 1 and 2, requested by plaintiff, and in refusing charge 5 of defendant's series, are not in harmony with the foregoing principles.

Certain other rulings are to the effect that, if the jury found that the train which inflicted the injury, if injury was inflicted, &c., was being run by defendant's servants in a recklessly negligent manner, and that the injury proximately resulted therefrom, recovery might be had, notwithstanding plaintiff's contributory negligence, and notwithstanding defendant's employès used all means in their power to avert the injury after the peril became manifest to them. It is true there is what may be termed a shading of the doctrine we have been considering, to the effect that to run a train at a high rate of speed and without signals of approach at a point where the trainmen have reason to believe there are persons in exposed positions on the track, as over an unguarded crossing in a populous district of a city, or where the public are wont to pass on the track with such frequency and in such numbers—facts known to those in charge of the train—as that they will be held to a knowledge of the probable consequences of maintaining great speed without warnings, so as to impute to them reckless indifference in respect thereto. would render their employer liable for injuries resulting therefrom, notwithstanding there was negligence on the part of those injured, and no fault on the

[Ga. Pacific Railway Co. v. Lee.]

part of the servants after seeing the danger. The doctrine is not based on the idea that they ought to have sooner observed the danger, however, but on the ground that they knew of its existence—of the presence of people in positions of peril, as a matter of fact, without seeing them at all in the particular instance. We fully subscribe to this doctrine, but deny its application in the case at bar. Some of the evidence went to show that this train was running at from fifteen to twenty-five miles an hour, and that no signals were being given. But, conceding that such a rate of speed and such absence of warnings might stand for recklessness and wantonness in approaching a crowded thoroughfare, the locality here involved is not shown by any tendency of the evidence to have been of that character. At most, it was the crossing of a considerably travelled public road over the railway, and there was nothing in the situation, assuming that it was well known to the trainmen, to justify the imputation to them of a consciousness that a natural or probable result of their conduct would be the infliction of injury to persons or property at that point. We apprehend that the maintenance of even a high rate of speed, and omission to give signals, in approaching such a crossing can be no more than negligence, in an action counting on which contributory negligence would be a good defense. Charge 5 asked by plaintiff should not, and charge 11 refused to defendant should, therefore, have been given.—*H. A. & B. R. R. Co. v. Sampson*, 91 Ala. 560. In all we have said with respect to the conduct of plaintiff's driver, we have assumed that in any aspect it involved only negligence, as distinguished from recklessness or wantonness. It is the opinion of my associates, which they desire stated here for the purpose of preventing misunderstanding, that if the party injured is himself guilty of wanton and reckless conduct, importing the needless incurring of danger, with a sense of the natural or probable consequences to himself, he may not recover even though the defendant's employés were also reckless or wanton, in such sort as to imply a willingness to inflict the injury.

The only possible remaining contention, upon which it is sought to predicate recklessness or wantonness of defendant's servants, is the supposed want of proper care and diligence on their part to avert the disaster, after they became aware of the perilous position of plaintiff's property. It will suffice to say in this connection that there is no evidence of any want of proper care and diligence in this regard. On the contrary, the evidence is full to the point that they did all that the situation demanded of them, after the peril became manifest. The charges requested by the defendant to the effect

[Birmingham Union Street Railway Co. v. Ralph.]

that there was no evidence of reckless, wanton or intentional misconduct, and those which proceeded on that theory, should have been given.

The general charge asked by defendant was well refused. It was requested on the assumption that plaintiff's driver was, on the uncontroverted evidence, guilty of negligence, as a matter of law, which contributed proximately to the result. That, as we have seen, was for the determination of the jury.

Charge 4 requested by defendant was faulty, in that it asserts as a matter of law that it was the duty of the driver to stop and listen *and* look, when, as we have attempted to demonstrate, it was open to the jury, on the evidence, to find that his full duty was discharged if he stopped and listened, and omitted to look.

The judgment of the City Court is reversed, and the cause remanded.